UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HOGANWILLIG, PLLC,

                                Plaintiff,                     **AMENDED COMPLAINT**

        v.

                                         Civil Case No. <u>20-cv-00577</u>

LETITIA A. JAMES, in her official capacity as the
Attorney General for the State of New York, and

ANDREW M. CUOMO, in his official capacity as
the Governor of the State of New York,

                                Defendants.

_____

        Plaintiff HOGANWILLIG, PLLC as and for its Amended Complaint against Defendants

LETITIA A. JAMES, in her official capacity as the Attorney General for the State of New York

("Defendant James"), and ANDREW M. CUOMO, in his official capacity as the Governor of the

State of New York ("Defendant Cuomo") (collectively, "Defendants"), alleges as follows:

## <u>NATURE OF ACTION</u>

        1.      This action seeks a declaratory judgment, injunctive relief, and attorneys' fees and

costs for the deprivation of Plaintiff's constitutional rights to which it is entitled under both the

United States Constitution, and the New York State Constitution.

        2.      This action seeks recovery for deprivations sustained by Plaintiff, and for

violations committed by Defendants while under color of State law, against Plaintiff's rights and

privileges guaranteed by Article I, § 8, Clause 3 of the United States Constitution ("Commerce

Clause"); Article I, §10, Clause 1 of the United States Constitution ("Contracts Clause"); Article

I, § 10, Clause 3 of the United States Constitution ("Compact Clause"); the Fifth, Ninth, Tenth

and Fourteenth Amendments of the United States Constitution; Article IV, § 3, Clause 7 of the New York State Constitution; and for violations of New York State Executive Law § 29-a.

3.     John Adams once stated: "The only maxim of a free government ought to be to trust no man living with power to endanger the public liberty"; and "Liberty, once lost, is lost forever." Benjamin Franklin, in a 1755 letter written on behalf of the Pennsylvania Assembly to the Colonial Governor, similarly provided: "Those who would give up essential Liberty, to purchase a little temporary Safety, deserve neither Liberty nor Safety."

4.     These principles ring particularly true today, given the current state of affairs in both the State of New York, and throughout the United States of America, related to the coronavirus ("COVID-19") pandemic.

5.     Defendants, in a disturbing and gross abuse of their power, have seized the COVID-19 pandemic to expand their authority by unprecedented lengths, without any proper constitutional, statutory, or common law basis therefor.

6.     Inherent within the exercise of the Attorney General's and Governor's actions is the false notion that a national emergency suspends the Constitutions of the United States of America and the State of New York.

7.     Plaintiff thus brings this lawsuit to assert challenges to the *ultra vires* actions taken by Defendants in response to the COVID-19 pandemic.

## THE PARTIES

8.     Plaintiff HoganWillig is a New York professional limited liability company with its principal place of business located at 2410 North Forest Road, Suite 301, Amherst, New York 14068, and is primarily engaged in the practice of law throughout the Western New York region.

{H2633876.1}

**HOGANWILLIG**
Attorneys at Law
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

2

HoganWillig operates five offices in Western New York, located in Getzville, Buffalo, Lockport, Lancaster, and Ellicottville.

9.      HoganWillig has been designated an "Essential Business" by the New York State Department of Economic Development d/b/a Empire State Development ("ESD"), the agency empowered by Defendant Cuomo to make such designations.

10.     Defendant James is and was the Attorney General for the State of New York, and is and was acting under color of State law and in her official capacity, at all times relevant to the assertions made by Plaintiff herein. Defendant James' principal place of business is located at the State Capitol Building, Albany, New York 12224, with a regional office located at Main Place Tower, Suite 300A, 350 Main Street, Buffalo, New York 14202

11.     Defendant Cuomo is and was the Governor of the State of New York, and is and was acting under color of State law and in his official capacity, at all times relevant to the assertions made by Plaintiff herein. Defendant Cuomo's principal place of business is located at the State Capitol Building, Albany, New York 12224.

## JURISDICTION AND VENUE

12.     Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over the claims asserted by HoganWillig as this action involves claims based upon Article I of the United States Constitution, the Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution (*U.S. Const. amend. V, IX, X, and XIV*), interpretation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, and seeks to prevent Defendants from interfering with federal rights secured by the United States Constitution.

13.     Pursuant to 28 U.S.C. § 1343(a)(3) and (4), the Court has subject matter jurisdiction over the claims asserted by Plaintiff as this action is brought to redress deprivations

{H2633876.1}                                                                              3

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

under color of State law, statute, Executive Order, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the United States Constitution.

14.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental and pendent subject matter jurisdiction over the State law claims asserted by Plaintiff because the State law claims, based upon Defendants' violations of New York State Executive Law § 29-a, are so related to the other claims in this action over which the Court has original subject matter jurisdiction, and arise from a common nucleus of operative facts, that the State law claims form part of the same case or controversy under Article III of the United States Constitution (*U.S. Const. art. III*).

15.     Pursuant to 28 U.S.C. § 1391(b), venue is properly vested in this Court because at least one Defendant resides in this judicial district and conducts substantial business in this judicial district, all Defendants reside in the State of New York, and a substantial part of the events giving rise to these claims occurred in this judicial district.

16.     There is a present and actual controversy between the parties.

17.     The relief requested by Plaintiff in this action is authorized pursuant to:

   a.   28 U.S.C. § 1343(a)(4) (to recover damages, or to secure equitable or other relief, for the protection of civil rights);

   b.   28 U.S.C. § 1651(a) (injunctive relief);

   c.   28 U.S.C. §§ 2201 and 2202 (declaratory relief, and other necessary or proper relief based upon a declaratory judgment);

   d.   42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the United States Constitution); and

   e.   42 U.S.C. § 1988 (award of attorneys' fees and costs).

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

## STATEMENT OF FACTS

### a. *Defendant Cuomo's Executive Orders, and ESD's Guidance Thereon.*

18.     The Supreme Court "ha[s] emphasized time and again that [t]he touchstone of due

process is protection of the individual against arbitrary action of government[.]" *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

19.     "[T]he fault [may] lie[] in a denial of fundamental procedural fairness . . . or in

the exercise of power without any reasonable justification in the service of a legitimate

governmental objective[.]" Id. at 845-46 (citations omitted).

20.     It is this specific type of arbitrary and unreasonable government action that is at

the heart of the instant matter between Plaintiff and Defendants.

21.     On March 7, 2020, Defendant Cuomo issued Executive Order 202, which, in part,

declared a State Disaster Emergency for the State of New York based upon the fact that travel-

related cases and community contact transmission of COVID-19 had been documented in New

York State, and that similar declarations had previously been made by the World Health

Organization and United States Health and Human Services Secretary, Alex M. Azar II.

22.     On March 18, 2020, in response to the COVID-19 pandemic, Defendant Cuomo

issued Executive Order 202.6, which proclaimed, in relevant part, as follows (emphasis added):

> Effective on March 20[, 2020] at 8 p.m.: All businesses . . . shall utilize, to the
> maximum extent possible, any telecommuting or work from home procedures that
> they can safely utilize . . . [and] shall reduce the in-person workforce at any work
> locations by 50% no later than March 20[, 2020] at 8 p.m. *Any essential business*
> *or entity providing essential services or functions shall not be subject to the in-*
> *person restrictions* . . . Any other business may be deemed essential after
> requesting an opinion from [New York State Department of Economic
> Development d/b/a Empire State Development ("ESD")], which shall review and
> grant such request, *should it determine that it is in the best interest of the state to*
> *have the workforce continue at full capacity in order to properly respond to this*
> *disaster.* No later than 5 p.m. on March 19, 2020, *[ESD] shall issue guidance*
> *[("Guidance")] as to which businesses are determined to be essential.*

**HoganWillig**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

23.     On March 20, 2020, Defendant Cuomo subsequently issued Executive Order 202.8, which further proclaimed, in relevant part, as follows (emphasis added):

> The provisions of Executive Order 202.6 are hereby modified to read as follows: Effective on March 22[, 2020] at 8 p.m.: All businesses . . . shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22[, 2020] at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. *An entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function.*

24.     Pursuant to Defendant Cuomo's Executive Orders, ESD issued Guidance which set forth certain industries which ESD deemed "essential" on behalf of Defendant Cuomo, and which were therefore permitted to remain in operation during the COVID-19 pandemic.

25.     Although legal services were not initially included within ESD's Guidance, ESD amended the Guidance on April 9, 2020 to include the following (emphasis added):

> Lawyers may continue to perform all work necessary for any service so long as it is performed remotely. *Any in-person work presence shall be limited to work only in support of essential businesses or services*; however, even work in support of an essential business or service should be conducted as remotely as possible.

26.     Notwithstanding the above, and prior to ESD's amending the Guidance to include legal services as an essential business thereunder, HoganWillig applied for, and received, a Designation from ESD as an "Essential Business."

27.     In an email from ESD dated March 22, 2020, ESD provided the following designation, in relevant part, to HoganWillig (emphasis added):

> Thank you for seeking designation as an "essential business" pursuant to . . . Executive Order 202.6 with respect to your business function of legal services for essential industries. *Based on the information you have provided, that business function is an essential business and/or supports an essential business and is not subject to the required 100% workforce reduction pursuant to the revised*

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

*Executive Order 202.6.* However, your business has been designated as essential solely with respect to those employees that must be present at the business location in support of essential business activities. No other employees/personnel shall be permitted to work [on-site]. Any other business activities being completed at your location that are not essential are still subject to the revised Executive Order 202.6.

28.     By designating HoganWillig an Essential Business, ESD, on behalf of Defendant Cuomo and pursuant to Executive Order 202.6, implicitly, though necessarily, "determine[d] that it [was] in the best interest of the [S]tate to have [HoganWillig's] workforce continue at full capacity in order to properly respond to [the COVID-19 pandemic]." *Executive Order 202.6.*

29.     By reason of the foregoing, HoganWillig has remained in operation throughout the duration of the COVID-19 pandemic, albeit having ceased its practice as it relates to those businesses or industries that have not been deemed essential, except in case of emergency.

**b.   *HoganWillig's Steps to Ensure a Clean and Healthy Work Environment.***

30.     In response to the Executive Orders issued by Defendant Cuomo, as well as ESD's designation of HoganWillig as an Essential Business, Plaintiff diligently prepared Workforce Reduction and Safety Protocols on March 28, 2020, so as to ensure its compliance with all of the necessary and appropriate social distancing and cleaning/disinfecting protocols as required or recommended by the state and federal agencies.

31.     Plaintiff consulted with its own medical and scientific advisors with regard to its practices to assure that its policies and disinfecting products provided maximum protection to Plaintiff's employees in the event the state and federal issued protocols were deemed inadequate to provide proper protection to Plaintiff's employees.

32.     On April 16, 2020, HoganWillig revised its Workforce Reduction and Safety Protocols due to the evolving nature of the COVID-19 pandemic.

33.    Plaintiff's Workforce Reduction and Safety Protocols were immediately implemented in the workplace following their codification on March 28th and April 16, 2020, and pursuant thereto, HoganWillig has taken actions, including the following:

a.    All employees who are able to perform their tasks at home must work from home. Employees will continue to earn full pay for that work, providing they are at their computer and/or phone doing work for [their] full shift;

b.    All personnel are instructed to remain home if they are suffering from any symptoms of any type of respiratory illness, cold, flu, cough, excessive sneezing, etc.;

c.    HoganWillig's IT [Department] has equipped any personnel who can work remotely, with appropriate hardware/software to allow them to access firm IP from home;

d.    Social distancing of at least six (6) feet between people must be maintained in all circumstances and for all offices and cubicles, unless there is a physical divider (wall) between employees. Any violations of social distancing protocols must be reported to a supervisor immediately;

e.    Transactions that require in-person notarization, or otherwise require in-person execution shall be conducted with masks, pre- and post-transaction hand sanitization, social distancing (and gloves if requested) with room density not to infringe on social distancing requirements;

f.    All employees have been provided with masks, and replacements when requested. Reception areas at all offices have masks for clients and guests;

g.  Sanitization of all offices daily, by professional cleaning crews, using government approved anti-viral, anti-bacterial products; and

h.  Hand sanitizers at all offices to be readily available, filled with approved isopropyl or methyl alcohol product exceeding governmental requirements.

34.  The above list of actions taken by HoganWillig is not all-inclusive, but rather, represents a shortened version of a more extensive protocol. HoganWillig's first priority is, and always has been, the health and safety of its employees, clients, and business partners.

35.  It must be stated that, even had Defendant Cuomo not implemented his Executive Orders, Plaintiff would have exercised its own judgment in establishing safety and health protocols in the best interests of its staff, clients, and visitors, similar to those described above. The populace, including the businesses thereof, do not need the iron hand of governmental authority to compel us to take precautions under these circumstances; over the course of dozens of epidemics and pandemics that have afflicted the State of New York, government's role was to educate the People, and allow the People to act in their own best interests.

36.  History has shown self-imposed quarantines and self-imposed "social distancing" to have been implemented by the masses when necessary.

37.  People are capable of acting in their own self-interests, and protecting themselves and their families, and have a right to do so without having the judgment of the Governor, as enforced by the State Attorney General, imposed upon them in the manner present in this case.

38.  The role of the Governor of New York State, is not now, nor ever has been, to force its will upon the people with respect to safety. When *legislation*, and not Executive Orders, have been handed down for that purpose, it has required the process of going through legislative committees for discussion and debate, being voted on by members of the Senate and Assembly,

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

and then being either vetoed or approved by the Governor. Such legislation is then subject to judicial review in the event it is felt that such legislation fails to pass constitutional muster.

39.     Governor Cuomo has seen fit to push the legislative process aside for these several months, to push aside legislation that was properly passed, and to suspend the doctrine of separation of powers for these several months.

40.     As egregious is the Attorney General's willingness to enforce the Governor's actions, notwithstanding the unconstitutionality thereof.

41.     The suspension of the separation of powers doctrine and the vesting of all governmental power in a single executive over this length of time is without precedent in this state.

42.     Nothing less than the fate of our republic, of our state, of our democratic form of government is at stake in these proceedings.

### c. *HoganWillig's Correspondence with Defendant James and the New York State Office of the Attorney General.*

43.     Defendant James, through two Assistant Attorneys General, began making inquiries of Plaintiff starting on or about April 6, 2020. There were telephone calls and emails.

44.     Plaintiff had continuous and intense dialogue with AAG Foshee, and responded to further demands made by Defendant James, up through and including May 13, 2020. Copies of HoganWillig's correspondence with AAG Foshee is annexed hereto. *Exhibit 1.*

45.     Despite the actions taken by HoganWillig via its Workforce Reduction and Safety Protocols in response to the COVID-19 pandemic to ensure that each of its offices are in compliance with Defendant Cuomo's Executive Orders and ESD's Guidance, HoganWillig continues to be contacted by the Office of the New York State Attorney General, by and through Assistant Attorney General Dawn A. Foshee, under direction of Defendant James, from April 6,

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

2020 to, most recently, May 15, 2020. AAG Foshee had been demanding certain information related to HoganWillig's designation as an Essential Business, as well as making unreasonable demands concerning its ongoing operations.

46.     HoganWillig was simultaneously contacted by the New York State Office of the Attorney General, by and through Assistant Attorney General Deanna R. Nelson, under direction of Defendant James, on April 8, 2020. AAG Nelson similarly requested certain information related to HoganWillig's designation as an Essential Business, as well as its ongoing operations.

47.     HoganWillig was assured by AAG Nelson that AAG Nelson and AAG Foshee were conducting parallel investigations into HoganWillig, and that any information provided to one AAG would be considered as having been shared with the other AAG.

48.     However, whereas HoganWillig participated in a constructive dialogue with AAG Nelson regarding permissible activities during the COVID-19 pandemic, protocols that needed to be followed, and safety measures that needed to be implemented, the same cannot be said for HoganWillig's dialogue with AAG Foshee.

49.     On April 20, 2020, HoganWillig received a letter from AAG Foshee via email titled "HoganWillig Cease & Desist Letter" (the "Cease and Desist Letter"). The Cease and Desist Letter provided that "[Defendant James] . . . demands that HoganWillig take immediate steps to implement a work plan to reduce the number of employees reporting to the Getzville office and transition to telecommuting or working from home on a regular basis." *Exhibit 2*.

50.     HoganWillig responded to AAG Foshee via a letter dated April 22, 2020, and signed by HoganWillig's Safety Officer, Steven M. Cohen, Esq. *Exhibit 3*.

51.     HoganWillig's April 22, 2020 letter outlined the actions taken by HoganWillig to do just that – implement a work plan to reduce the number of employees reporting to its office.

{H2633876.1}

11

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

These actions, as well as additional actions concerning the safety of those employees and clients reporting to the office, are set forth in HoganWillig's Workforce Reduction and Safety Protocols.

52.     AAG Foshee responded on April 27, 2020 via email in a letter titled "HoganWillig Directive Letter" (the "Directive Letter"), which required that HoganWillig take additional actions, further and in addition to those already taken, to further "fulfill [its] obligations" under the Executive Orders. *Exhibit 4*.

53.     HoganWillig responded to the Directive Letter via a letter dated April 28, 2020. HoganWillig's April 28, 2020 letter again set forth the actions taken by HoganWillig to promote the safety of its employees and the cleanliness of its office, to comply with Defendant Cuomo's numerous Executive Orders, and to respond appropriately and sufficiently to each of Defendant James' requests with respect to HoganWillig's continued operations. *Exhibit 5*.

54.     When HoganWillig did not receive an immediate response from AAG Foshee in response to its April 28, 2020 letter, HoganWillig contacted AAG Foshee via telephone and email on April 30, 2020, so as to ensure that Defendant James had all of the information she required.

55.     AAG Foshee responded later that same day, indicating that Defendant James "continue[d] to be concerned," and accusing HoganWillig of "continu[ing] to engage in circumlocution."

56.     AAG Foshee concluded her April 30, 2020 email by stating: "Our dialogue has been largely unproductive, as nothing has changed since we first contacted you. Our concerns with your continued operations have not been addressed, so we will be in further contact."

57.     Despite HoganWillig's best efforts to not only respond to each and every request made by Defendant James, by and through AAG Foshee, but to also take additional steps to

**HoganWillig**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

protect the health and safety of its employees, clients, and the like, Defendants have continued to assert threats against HoganWillig, to the extent that Defendant James, on behalf of Defendant Cuomo, has sent to HoganWillig the Cease and Desist Letter and continued written rejections of all proposed measures to satisfy Defendant James.

58.     Even the implementation of strict protocols, including electronic monitoring of HoganWillig's employees, would not satisfy Defendant James.

   ### d.   *Violations and Deprivations of Plaintiff HoganWillig's Constitutional Rights under the Due Process Clause of the Fifth and Fourteenth Amendments, and the Void for Vagueness Doctrine.*

59.     The Attorney General's willingness to enforce improper Executive Orders, through AAG Foshee, offends the United States Constitution. The Executive Order which Defendant James purports to be enforcing either violates the Due Process Clause of the Fourteenth Amendment because it fails to give reasonable direction to people of ordinary intelligence as to what is forbidden under the law, or Defendant James is unlawfully acting to restrict conduct that was never intended to be restricted or prohibited by Defendant Cuomo's Executive Orders.

60.     By prohibiting what the Executive Orders, as interpreted by ESD, are intended to allow, that is, for essential businesses to operate to keep certain functionality viable that is deemed necessary for society's best interests, Defendant James, through AAG Foshee, is putting Plaintiff and other businesses similarly deemed essential, in the impossible position of determining what the Executive Orders do and do not permit, under threat of civil and/or criminal prosecution.

61.     The Executive Orders, as interpreted by Defendant James, have unreasonably restricted and sought to restrict Plaintiff's activities.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

62.     The Executive Orders, as sought to be enforced by Defendant James, would be unreasonably burdensome on Plaintiff and Plaintiff's employees and management.

63.     For Defendant James, through AAG Foshee, it became something of a game, a guessing game, where the consequences to Plaintiff could be most severe.

64.     This is precisely the dilemma the Due Process Clause's requirement of fair notice seeks to avoid, particularly where, as here, there is no procedure whereby Plaintiff and others similarly situated can challenge the language or meaning of the Executive Orders.

65.     The Fifth Amendment to the United States Constitution provides: "[N]or shall any person . . . be deprived of life, liberty, or property, without due process of law [(the "Due Process Clause")]; nor shall private property be taken for public use, without just compensation [(the "Takings Clause")]." *U.S. Const. amend. V.*

66.     The Supreme Court has held that "[t]he fundamental principle that laws regulating persons or entities must give fair notice of what conduct is required or proscribed . . . is essential to the protections provided by the Fifth Amendment . . . which requires the invalidation of impermissibly vague laws." *F.C.C. v. Fox Television Stations*, 567 U.S. 239, 240 (2012).

67.     The Fifth Amendment, by and through the Fourteenth Amendment, provides both substantive and procedural due process rights to individuals. Here, Defendants' actions have violated both Plaintiff's substantive and procedural due process rights.

68.     The Fourteenth Amendment to the United States Constitution has been used to apply the protections of the Fifth Amendment to those violations of persons' rights by the States. The Fourteenth Amendment provides, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

state deprive any person of life, liberty, or property without due process of law" (the "Due Process Clause"). U.S. Const. amend. XIV.

69.    "[S]ubstantive due process prevents the government from engaging in conduct that 'shocks the conscience' . . . or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v.California*, 342 U.S. 165, 172 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937)).

70.    Even assuming, *arguendo*, that there exists a legitimate State interest in protecting the public's health, the actions of Defendants in this matter are unreasonable and arbitrary, and are not the least restrictive means for achieving the State's interests.

71.    Given the types of services being provided by HoganWillig, Defendants' actions in issuing Executive Orders which limit Plaintiff's conduct, and subsequently threatening to close HoganWillig's doors via the Cease and Desist Letter (despite HoganWillig's being deemed an Essential Business), bear no relation to the State's purported interest in protecting the public's health and welfare, and are severely and unduly restrictive of Plaintiff's constitutional rights, as there is no evidence to suggest that, by continuing its operations with its pared down staff and pared down activity performing only work deemed essential, HoganWillig is placing the public at any greater of a risk of contracting COVID-19, whether it be HoganWillig's clients, employees, or others visiting the office.

72.    The Executive Orders regarding being designated an "Essential Businesses," as interpreted by Defendant James, are unreasonable, unduly burdensome, and invasive upon the sanctity of attorney-client privilege. Even given the early predictions of the statewide inundation of patients requiring hospitalization and ventilators, Defendant James' interpretations of the Governor's Executive Orders, and her enforcement efforts as against Plaintiff, were improper.

73.     Defendant Cuomo's improper exercise of emergency executive power, as interpreted and sought to be enforced by Defendant James, following the emergence of new data, is inflicting upon Plaintiff, and society at large, irreparable harm.

74.     Executive Order 202 *et seq.*, and more particularly, Executive Orders 202.6 and 202.8, constitute arbitrary, capricious, irrational, and abusive conduct which unlawfully interferes with HoganWillig's liberty and property interests, which are protected by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

75.     By attempting to now limit HoganWillig's ongoing operations via the Cease and Desist Letter, follow up demands by Defendant James, and her threatening to file for judicial relief as against HoganWillig, in the name of enforcing Defendant Cuomo's Executive Orders, Defendants have violated HoganWillig's right to substantive and procedural due process given HoganWillig's designation as an Essential Business, as well as its protected liberty interest in its right to remain in business without arbitrary governmental interference.

76.     Defendant Cuomo, by and through Defendant Assistant Attorney General James, has also violated the Void for Vagueness Doctrine by virtue of issuing vague Executive Orders which lend themselves to arbitrary enforcement.

77.     "[T]he terms of a penal statute . . . must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

{H2633876.1}

16

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

78.     Where a law fails to specifically enumerate the practices that are either required or forbidden, such that the "ordinary citizen" does not know what the law requires, said law is void for vagueness. *See Coates v. City of Cincinnati*, 402 U.S. 611 (1971); *see also FCC v. FOX Television Stations, Inc.*, 567 U.S. 239 (2012).

79.     Here, Defendant Cuomo's Executive Orders are immeasurably vague, as even the party charged with enforcing the Executive Orders, Defendant James, by and through AAG Foshee, has noted in her correspondence to Plaintiff that she is enforcing her "interpretation" of the Executive Orders. If Defendant James must necessarily interpret the Executive Orders in order to enforce the same as against businesses such as Plaintiff, how are those same businesses to operate under and pursuant to the same Executive Orders, absent facing a harassing and altogether impermissible enforcement action by Defendant James?

80.     It is for this reason Defendant Cuomo's Executive Orders, as interpreted and enforced by Defendant James, have violated Plaintiff's rights under the Void for Vagueness Doctrine of the Due Process Clause of the Fifth and Fourteenth Amendments.

### e.     *Violations and Deprivations of Plaintiff HoganWillig's Constitutional Rights under the Equal Protections Clause of the Fifth and Fourteenth Amendments.*

81.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any state . . . deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV*.

82.     At its core, the Equal Protection Clause of the 14th Amendment to the United States Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups; in other words, persons who appear similarly situated must be similarly treated.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

83.     When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational basis for such disparate treatment, to ensure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

84.     Here, as other states are relaxing their COVID-19-related restrictions based on new data that is emerging daily, Defendants are not, and are thus discriminating against identically-situated businesses without any rational basis.

85.     Law firms around the State of New York, and the several states in the United States of America, are free to continue to operate, whereas Defendant James, through AAG Foshee, ostensibly to enforce Defendant Cuomo's Executive Orders, is preventing Plaintiff from so operating, under threat of a Cease and Desist Letter, and civil and criminal penalties.

86.     There is no rational basis for the disparate treatment of Plaintiff by Defendants as compared to identically situated businesses, both within and without the State of New York.

87.     Moreover, there exists no substantial difference in the COVID-19 infection rate throughout the State of New York that would otherwise justify Defendants' targeting of Plaintiff in the instant enforcement action.

88.     It is noteworthy that even the Appellate Division of the New York State Supreme Court, First Department, in the heart of downtown Manhattan (i.e., the concentration point for COVID-19), has announced that it is presently resuming operations in a substantial way.

89.     Defendant Cuomo justified the issuance of Executive Orders 202.6 and 202.8 by suggesting that there would be an increased need for Intensive Care Unit beds and ventilators, to care for individuals who tested positive for COVID-19.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

90.     On March 19, 2020, the day before Executive Order 202.8 was issued, Defendant Cuomo stated that New York State's five (5) to six (6) thousand (5,000-6,000) ventilators were inadequate and New York State may ultimately end up requiring upwards of thirty thousand (30,000) ventilators to manage the COVID-19 pandemic.

91.     The goal at the time of the issuance of Executive Orders 202.6 and 202.8 was to "flatten the curve," a term widely used to describe efforts to slow the spread of COVID-19 so as to prevent healthcare facilities from being overwhelmed by the influx of COVID-19 cases.

92.     The next day, Defendant Cuomo stated that the fifty five thousand (55,000) hospital beds available in the State of New York (four thousand (4,000) of which are located in Erie County), would also need to be increased to combat the pandemic.

93.     Similarly, the State of New York has approximately three thousand five hundred (3,500) ICU's, whereas Erie County has approximately three hundred fifty (350), all of which Defendant Cuomo believed would need to be increased to combat the pandemic.

94.     Plaintiff does not criticize Defendant Cuomo for taking steps and measures based on the data available to him at the time of the issuance of any Executive Orders, and recognizes the need for cautious planning and austere measures and exercise of emergency powers that infringe on the rights of the people when the data supports it.

95.     As of the date of this Amended Complaint, the numbers have turned out to be drastically different, and less significant, than predicted at the outset.

96.     The available data from studies performed throughout the United States does not support the legitimacy of the Defendants' continuing actions in issuing arbitrary, unduly excessive Executive Orders having the full force and effect of law upon individuals and business

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

located within the State of New York, largely in violation of the individuals' and business' state and federal Constitutional rights.

97.    The highest total number of hospitalizations to date was in early April and peaked below nineteen thousand (19,000), per Defendant Cuomo himself. More specifically, of the four thousand (4,000) hospital beds available in Erie County, only one hundred twenty-two (122), or approximately three percent (3%), are being used for COVID-19 patients as of June 1, 2020.

98.    Ventilator usage is likewise significantly down, and never reached the numbers predicted by Defendant Cuomo, particularly given that each day there becomes available additional therapeutic remedies to treat those afflicted by COVID-19, most of which were not available at the onset of the COVID-19 pandemic. Such remedies include, but are not limited to, plasma transfers, the drug known as Remdesivir (which is predicted to arrive in hospitals throughout the United States imminently), and other forms of therapy.

99.    The medical data available to the Governor since mid-April of 2020 from the worldwide scientific and medical communities, and both federal and state sources, compel a finding that the emergency powers being exercised by Defendant Cuomo that infringe on the rights and liberties of the governed, have been abused since mid-April.

100.    Whereas at one point in time, there was insufficient data on the COVID-19, such that certain austere measures may have been justified on an emergency basis, the continuation of those measures at this time cannot be justified by any legal or reliable scientific metric.

101.    In a recent study (the "Supermarket Study"), the results of which were released by Defendant Cuomo on April 23, 2020, three thousand (3,000) supermarket customers throughout New York State were tested for COVID-19. The expanded data from the Supermarket Study indicated that approximately fifteen percent (15%) of those tested had the antibody, indicating

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

they, at some point, had COVID-19. In New York City, the percentage was even higher, at a staggering twenty-two percent (22%).

102.    In demonstrable figures, as of April 23, 2020, approximately three million (3,000,000) people in the State of New York have or had COVID-19, which is more than ten (10) times the number of two hundred fifty thousand (250,000) that was published at that time.

103.    Just as importantly, the data suggests that approximately ninety percent (90%) of those that tested positive for COVID-19 likely had the disease and recovered from it and did not know it because the symptoms were so mild.

104.    Further, of those individuals who have tragically passed away due to COVID-19, over ninety percent (90%) were suffering from at least one (1) pre-existing medical condition, which, when taken together with COVID-19, significantly increased the likelihood of death.

105.    The data from the Supermarket Study also suggests that the death rate from COVID-19 is likely not higher than one half of one percent (0.5%), which is significantly less than the death rates of around six percent (6%) that the general public is being led to believe.

106.    Defendant Cuomo's restrictions, *vis-à-vis* the Executive Orders, have caused significant physical, mental, and emotional issues for individuals residing in the State of New York. To wit, there has been an alarming increase in suicide among individuals of all ages and increasing reports of severe mental health problems for thousands of individuals.

107.    Defendants operated under the justification that people remain vulnerable without hope of a vaccine any time soon, and without the prospect of having respirators if they are hospitalized, and there being no intensive care beds available to them if they are hospitalized.

108.    There are currently greater than one hundred (100) vaccine studies taking place throughout the United States, several of which have indicated that they expect to have a vaccine

{H2633876.1}

**HOGAN WILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

21

manufactured and available for testing protocols as soon as June or July of 2020, with significant dosages becoming available to the general public by the end of 2020, or early 2021. This, despite Defendant Cuomo's publicized estimates that the development of such a vaccine could take between two to six (2-6) years, with such a vaccine becoming widely available even later.

109.   The Federal Government has entered into contracts with approximately six (6) suppliers, such that they will have two hundred thousand (200,000) more ventilators available to treat COVID-19 patients by the end of 2020, which ventilators are currently being manufactured at a rate of thirty thousand (30,000) per month.

110.   Whether these ventilators are even useful in treating COVID-19 patients has been questioned by numerous medical experts, as there have been no reported cases where a patient suffered an adverse medical event, either because of the lack of a ventilator or an ICU bed.

111.   Simply put, the available scientific data from studies performed throughout the United States does not support the legitimacy of the Defendants' continuing actions.

112.   Defendant Cuomo's Executive Orders, and Defendant James' purported enforcement thereof as against Plaintiff under threat of a Cease and Desist Letter and civil and criminal penalties, are thus in direct violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

113.   Consistent with this is the Memorandum issued by Chief Administrative Judge Lawrence K. Marks on April 30, 2020 stating that, effective May 4, 2020, the Courts in New York would begin engaging in expanded motion practice, which will only further require that Plaintiff be present in the office, as its matters are placed back on the Court's calendar.

114.   Defendant James, through AAG Foshee, does not consider the matters that the Courts are putting on the calendar, or virtual depositions to be "essential," and refuses to allow

people who are not electronically set up at their homes to come to our technologically equipped, handicapped-accessible office in Amherst to attend video conferences and depositions, and would require participants to attend such by non-video, telephonic means, notwithstanding the judiciary's attempts to resume litigation operations to the extent possible.

115.    Defendant James, through AAG Foshee, would not consider handling appellate work by a law firm, drafting of briefs, appearing remotely, to be within the ambit of an essential law firm's legitimate business, as she maintains that such research and writing and compilation of exhibits can be done from home.

116.    Defendants have engaged in scare tactics, deceptively justifying Defendant Cuomo's "emergency powers" that are no longer reasonably necessary to protect the public.

117.    As other states are relaxing restrictions based on new data that is emerging, Defendants are not, and are thus discriminating against identically situated businesses without any rational basis, in violation of the Fourteenth Amendment's Equal Protection Clause.

f.    ***Violations and Deprivations of HoganWillig's Constitutional Rights Under the Dormant Commerce Clause: Article I, Section 8, Clause 3 of the United States Constitution.***

118.    Article I, Section 8, Clause 3 of the United States Constitution (the "Commerce Clause") provides that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." *U.S. Const. art. I, sec. 8, cl. 3*.

119.    The Supreme Court, in numerous decisions, has imported into the Commerce Clause a prohibition against states passing legislation that discriminates against, or otherwise excessively burdens, interstate commerce. *See, e.g.*, *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 669-70 (1981).

**HoganWillig**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

120.    Defendant Cuomo's Executive Orders, and the actions taken by Defendant James in enforcing said Executive Orders, discriminate against, and place an excessive burden upon, interstate commerce.

121.    While combatting COVID-19 is an objectively positive goal, the means of doing so being utilized by Defendants have unduly and unnecessarily restricted Plaintiff, and are necessarily unconstitutional under, and pursuant to, the Commerce Clause.

122.    The State of New York is home to the New York Stock Exchange, shares borders with Pennsylvania, New Jersey, Connecticut, Massachusetts, and Vermont, shares an international border with Canada, and has one of the busiest commercial seaports in the United States, and perhaps the world.

123.    Furthermore, Plaintiff has clients throughout the United States, and clients located specifically in Western New York, including in industries deemed essential by ESD, who and/or which regularly conduct business throughout the United States of America and internationally.

124.    By taking the above actions, Defendants have discriminated against, and placed an excessive burden upon, HoganWillig, which regularly engages in interstate commerce, as Defendants have restricted the conduct of business in order to combat the COVID-19 pandemic.

**g.    *Violations and Deprivations of HoganWillig's Constitutional Rights Under the Contracts Clause: Article I, Section 10, Clause 1 of the United States Constitution.***

125.    Similarly, Article I, Section 10, Clause 1 of the United States Constitution (the "Contracts Clause") provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." *U.S. Const. art. I, sec. 10, cl. 1.*

126.    As described above, Defendants have placed undue and excessive burdens upon Plaintiff and the firm's conduct of business during the COVID-19 pandemic.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

127.    Such burdens include, but are certainly not limited to, impairing HoganWillig's obligations under contracts with its clients (particularly those clients engaged in business in industries deemed essential by ESD's Guidance), vendors, and independent contractors.

128.    The New York State Governor's Executive Orders have become even more oppressive, in contrast to other states, as many States are now modifying their Executive Orders based on the scientific data and are lifting restrictions, and the Federal Government, in an effort to prevent even more damage to the economy, consistent with the scientific data, is encouraging processes that will return workers to their jobs.

129.    By placing such undue and excessive burdens upon Plaintiff and the firm's conduct of business, thereby impairing HoganWillig's obligations under certain contracts with its clients, vendors, and independent contractors, Defendants have infringed upon the constitutional rights of HoganWillig pursuant to the Contracts Clause.

### h.    Violations and Deprivations of HoganWillig's Constitutional Rights Under the Takings Clause of the Fifth Amendment of the United States Constitution.

130.    "[T]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

131.    The Supreme Court "recognized that government regulation of private property may . . . be so onerous that its effect is tantamount to a direct appropriation or ouster . . . and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537.

{H2633876.1}                                                                                                        25

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

132.   "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415-16 (1922).

133.   HoganWillig has a protected liberty interest in its right to remain in business without arbitrary governmental interference and in its fundamental property right to use and enjoy the land in which it holds a recognized interest. *See MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440-41 (E.D. Pa. 2011) (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995)).

134.   Plaintiff HoganWillig's property and liberty interests in remaining in business amid the COVID-19 pandemic were secured by ESD, on behalf of Defendant Cuomo, when Plaintiff was formally designated an essential business.

135.   Defendant has been called upon to sacrifice all beneficial usage of its Property in the name of the common good, that is, to leave its properties economically and otherwise idle, and for this, it has suffered a taking. *Id.*

136.   Defendant Cuomo has seized, without just compensation, the property of businesses and individuals across the State of New York by forcing the closure of specified businesses and restricting travel and free association via his Executive Orders.

137.   Defendant James' interpretation, and enforcement measures based thereon, of Defendant Cuomo's Executive Orders, have resulted and continue to result in an unconstitutional taking, in contravention of the Fifth Amendment to the United States Constitution.

138.   The Executive Orders, together with Defendants' actions in attempting to enforce the same as against HoganWillig, have adversely impacted HoganWillig's use of its tangible

{H2633876.1}                                                                                                                  26

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

property and physical locations (the "Property"), such that, at least temporarily, the Executive Orders have substantially diminished the economically beneficial use of HoganWillig's Property.

139.    Under the Executive Orders, together with Defendants' actions in attempting to enforce the same as against HoganWillig, all economically beneficial and profitable uses of HoganWillig's Property, and HoganWillig's interests therein, have been extinguished.

140.    Since the onset of Defendant Cuomo's Executive Orders, HoganWillig has been threatened with fines and penalties for continuing to operate its business, while simultaneously being restricted from the use of its property for any economically beneficial or profitable use.

141.    Defendant Cuomo's Executive Orders have effectively rendered useless Plaintiff's property from its economic benefit during the pendency of the Executive Orders.

142.    Here, Plaintiff law firm HoganWillig and other similarly-situated businesses have suffered a loss of "all economically beneficial uses" of their property while Defendant Cuomo's Executive Orders remain in effect. This loss categorically constitutes a taking, whether it be of their inability to profitably operate at its physical locations, or their inability to exercise their property rights with regard to their tangible property. See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 (1992).

143.    These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment. Without extending "just compensation" to HoganWillig and other similarly-situated businesses, the Executive Orders jeopardize the sustainability of these business and the rights of the owners with respect to their property interests.

144.    In the alternative, under the framework articulated by the Supreme Court in *Penn Central Transportation Co. v. City of New York, 438 US 104 (1978),* Defendant Cuomo's

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

Executive Orders, and the enforcement thereof by Defendant James, constitute a taking based upon "the magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[] with legitimate property interests." *Lingle v. Chevron,* 544 U.S. 528 at 540 (2005).

145.    The Supreme Court, in *Penn Central*, set forth the framework for assessing whether government action is considered a regulatory taking, identifying "[three] factors that have particular significance," including: (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978).

146.    Even if the regulation falls short of eliminating all economically beneficial use of the property, a taking nonetheless has occurred. *Palazzolo v. R.I.,* 533 U.S. 606, 617 (2001).

147.    Defendant Cuomo's Executive Orders constitute a regulatory taking implemented for a public purpose, and thus, the failure to pay just compensation contravenes the Takings Clause of the Fifth Amendment. *Coalition f or Gov't Procurement v. Fed. Prison Indus.,* 365 F.3d 435, 478 (6th Cir. 2004); *see also Horne v. Dep't of Agric.,* 576 U.S. 350 (2015) ("Nothing in the text or history of the Takings Clause . . . suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.").

***i.  Executive Law § 29-a is Unconstitutional under the Separation of Powers Doctrine of the New York State Constitution.***

148.    The New York State Constitution provides for a complete separation of powers among the three "co-ordinate and co[-]equal branches" of government: the executive, the legislative, and the judicial. *N.Y. Const., art. III, sec. 1; art. IV, sec. 1;* and *art. VI.*; *see County of Oneida v. Berle*, 49 N.Y.2d 515, 522 (1980); *LaGuardia v. Smith*, 288 N.Y. 1, 5-6 (1942).

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

149.     Thus, per the New York State Constitution, "the separation of powers 'requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies.'" *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 821-822 (2003) (*quoting Bourquin v. Cuomo*, 85 N.Y.2d 781, 784 (1995)).

150.     Moreover, as the New York Court of Appeals as noted, "a foundation of free government is imperiled when any one of the coordinate branches . . . interferes with another." *County of Oneida*, 49 N.Y.2d at 522.

151.     The Constitution's very "object . . . is to regulate, define and limit the powers of government by assigning to the executive, legislative and judicial branches distinct and independent powers," and "[i]t is not merely for the convenience in the transaction of business that they are kept separate by the Constitution, but for the preservation of liberty itself . . ." *People ex rel. Burby v. Howland*, 155 N.Y. 270, 282 (1898).

152.     Article III, Section 1 of the New York State Constitution provides: "The legislative power of this state shall be vested in the senate and assembly." *N.Y. Const., art. III, sec. 1*.

153.     Article IV, Section 1, of the New York State Constitution provides, in relevant part: "The executive power shall be vested in the [G]overnor[.]" *N.Y. Const., art. IV, sec. 1*.

154.     Notably, *nowhere* in the New York State Constitution is the Chief Executive, Defendant Cuomo, given or delegated any legislative authority. The relevant provision in the New York State Constitution to such a delegation is found in Article IV, Section 3, which provides, in relevant part: "The [G]overnor shall have power to convene the legislature, or the senate only, on extraordinary occasions. At extraordinary sessions convened pursuant to the

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

provisions of this section no subject shall be acted upon, except such as the [G]overnor may recommend for consideration." *N.Y. Const., art. IV, sec. 3.*

155.    As a basis for his authority to issue Executive Orders responsive to the COVID-19 pandemic, Defendant Cuomo expressly cites to New York State Executive Law § 29-a.

156.    New York State Executive Law § 29-a grants Defendant Cuomo the authority, by and through the issuance of Executive Orders, to:

> [T]emporarily suspend any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary to cope with the disaster or if necessary to assist or aid in coping with such disaster.

157.    However, on March 3, 2020, just four (4) days before issuing Executive Order 202, thereby declaring a State Disaster Emergency in the State of New York State, the New York State Legislature passed a bill at Defendant Cuomo's request, which Defendant Cuomo signed into law, to expand Defendant Cuomo's emergency management power, thus giving Defendant Cuomo new power to issue directives necessary to cope with a broad list of potential disasters.

158.    The expansion of Defendant Cuomo's executive powers was a blatant attempt by Governor Cuomo to delegate as much legislative authority to himself as possible, so that he may act, and has acted, as the central authority for the State of New York throughout the COVID-19 pandemic. Moreover, significantly, the New York State Legislature appears to have conceded this power to Defendant Cuomo, in clear contravention of the separation of powers doctrine.

159.    Furthermore, the provisions of the new law unlawfully broadened Defendant Cuomo's authority to act during official state disasters beyond the COVID-19 crisis..

160.    Defendant Cuomo's fervid use of executive authority is shown by his issuance of forty (40) Executive Orders to date, and hundreds of, albeit temporary, sweeping changes to

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

various State laws. As the COVID-19 pandemic continues to subside, Defendant Cuomo continues to wield his executive powers derived from the acquiescence of a complicit legislature.

161.    Notwithstanding the above, New York State Executive Law § 29-a provides that this authority is "[s]ubject to the state constitution, the federal constitution and federal statutes and regulations." The Executive Law does not require Defendant Cuomo to obtain legislative approval prior to declaring a State Disaster Emergency, nor does it authorize the New York State Legislature to limit or revoke Defendant Cuomo's authority to so issue such Executive Orders.

162.    In fact, Executive Law § 29-a(2)(a) provides that: "no suspension or directive shall be made for a period in excess of thirty days, provided, however, that upon reconsideration of all of the relevant facts and circumstances, the [G]overnor may extend the suspension for additional periods not to exceed thirty days each."

163.    Executive Law § 29-a effectively gives Defendant Cuomo carte blanche to issue Executive Orders having the full force and effect of law, and Defendant Cuomo has taken and utilized this statutory authority to impose unconstitutional restrictions on the citizens and businesses located within, and even without, the State of New York.

164.    Under the guise of Executive Law § 29-a, as interpreted and sought to be enforced by Defendant James, the New York State Legislature has unconstitutionally delegated its legislative authority to Defendant Cuomo, as it has granted Defendant Cuomo limitless discretion to issue Executive Orders having the force of law.

165.    The Governor's exercise of emergency power during the COVID-19 pandemic should have started with Defendant Cuomo convening the New York State Legislature on an extraordinary basis, to enable the Legislature to take whatever measures were deemed reasonably

{H2633876.1}

31

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

necessary, but in a constitutional framework. The Governor is neither a Czar, nor a king; rather, he is the chief executive of one of the three branches of New York State Government.

166.    Executive Law § 29-a is in direct violation of the separation of powers doctrine, as the New York State Constitution vests sole legislative authority in the New York State Legislature, and is therefore facially and substantively unconstitutional as an improper delegation of legislative power upon Defendant Cuomo by the New York State Legislature.

*j.  **HoganWillig's State Law Claim against Defendants under Executive Law § 29-a.***

167.    As noted above, New York State Executive Law § 29-a(1) grants Defendant Cuomo the authority, by the issuance of Executive Order(s), to (emphasis added):

> *[T]emporarily* suspend any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action *necessary to cope with the disaster* or if *necessary to assist or aid in coping with such disaster*.

168.    Executive Law § 29-a(2) also provides, in relevant part (emphasis added):

> Suspensions shall be subject to the following . . . limits[:] . . . no suspension or directive shall be made which is not in the interest of the health or welfare of the public *and which is not reasonably necessary to aid the disaster effort*; [and] . . . any such suspension, order or directive shall provide for the *minimum deviation* from the requirements of the statute, local law, ordinance, order, rule or regulation suspended consistent with the goals of the disaster action deemed necessary[.]

169.    Thus, although Executive Law § 29-a confers certain powers upon Defendant Cuomo (assuming, *arguendo*, that it is, in fact, constitutional), it simultaneously imposes certain restrictions upon him; namely, that actions taken pursuant to Defendant Cuomo's authority thereunder be "reasonably necessary to aid in the disaster effort," and that such actions provide for the "minimum deviation" from the suspended statute, law, ordinance, order, rule or regulation, while remaining consistent with the goals of the disaster action.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

170.    The actions of Defendants in threatening to shutter Plaintiff's business via the Executive Orders, and the purported authority of Defendant James to enforce violations thereof as a violation of New York State Public Health Law § 12, are neither reasonably necessary to combat the COVID-19 pandemic, nor the minimum deviation from any suspended statute, law, etc., such that Defendants' actions remain consistent with the goals of the COVID-19 response.

171.    Put differently, neither the uniqueness nor the severity of the COVID-19 pandemic justifies the austere measures taken by Defendant Cuomo in response thereto.

172.    In fact, there is an irony in the State of New York and Defendant Cuomo justifying Defendant Cuomo's restrictions on the "uniqueness" of the COVID-19 pandemic, when it is the restrictions themselves that make the COVID-19 pandemic so unique.

173.    Indeed, absent such extraordinary constraints, the COVID-19 challenge is similar to what the public has faced many times before. New Yorkers have weathered floods and braved hurricanes; outlasted droughts and survived economic depressions; and, yes, they have persisted in the face of diseases more contagious and detrimental to the public welfare than the one we countenance today.

174.    Once Defendant Cuomo was convinced that his unilateral, unprecedented actions were necessary, a convenient presumption arose that the danger the public faced, too, was unprecedented. Had the public gone about its business as usual, there is not a single reason to believe that there would be a need for commercial lockdowns or home isolation orders.

175.    In short, Defendant Cuomo has been unconstitutionally legislating from the very exigency he created. It is a self-fulfilling prophecy of the most dangerous sort.

176.    As Defendant Cuomo sees it, the proof of the severity of the COVID-19 pandemic is that we have been compelled to "shelter in place" and don medical masks at all hours of the

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

day. And, Defendant Cuomo would permit us to shed these restrictions only by showing that the COVID-19 pandemic has subsided.

177.     In the United States, the burden is always on the government to justify its actions, not on the citizenry to wait out its deprivations; this is the ingenious method we have devised to ensure that our laws are cloaked with good faith and founded in rational purpose.

178.     In the normal course, the State may police the marginal details of its sphere so long as its regulations are related to a legitimate government interest. However, when the State enacts laws that burden fundamental rights, not only must the laws promote a *compelling* government interest; they must do so in the manner least burdensome to those rights.

179.     There are precious few liberties that we can claim as fundamental. Besides those expressly recognized in the United States Constitution, the public inherits by right the dignities that are either "deeply rooted in this Nation's history and tradition" or that are, by their nature, "implicit in the concept of ordered liberty."

180.     That our basic freedoms extend to the ability to walk outside, to assemble in the public square, to move freely on the roads, and to make a living for ourselves is beyond dispute. And we have *at least* an equally strong claim not to be imprisoned against our will absent the direst of circumstances.

181.     Importantly, President Trump acknowledged that the many failed attempts at mitigating COVID-19, coupled with the damaged economy, could ultimately end up more lethal than the COVID-19 pandemic itself, stating: "At a certain point, we have to get open and have to get moving. We don't want to lose these companies, we don't want to lose these workers, we want to take care of our workers, so we'll be doing something relatively quickly."

**HOGAN**WILLIG
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

182.   Further, Defendants' restrictions and policies are counterintuitive when considered together with the CARES Act's Paycheck Protection Program, which authorizes partially-forgivable loans to small businesses during the COVID-19 crisis.

183.   Recipients may become ineligible for loan forgiveness when the loan comes due if the proceeds are used for anything other than payroll costs, mortgage interest, rent, and utilities over the twenty-four (24) weeks after disbursement of the loan proceeds.

184.   With businesses now shut down, no money coming in, and employees laid off, there is a possibility that the measures taken by Defendants will cause recipients of the funds to utilize those funds for non-covered expenses, rendering them ineligible for loan forgiveness.

185.   In addition, separate and apart from Defendant Cuomo having exceeded his authority under New York State Executive Law § 29-a by issuing Executive Orders out of reasonable necessity as is required, Plaintiff has gone above and beyond to take its own steps to ensure a clean and healthy work environment for its employees, clients, and the like.

186.   As outlined hereinabove, Plaintiff developed and immediately implemented its Workforce Reduction and Safety Protocols in response to the ongoing COVID-19 pandemic.

187.   In addition, Plaintiff has taken steps to ensure that all client meetings are done via Skype, Zoom, or through other similar virtual technology. To wit, HoganWillig is only holding in-person client meetings when such meetings are absolutely necessary; furthermore, when such in-person meetings do occur, HoganWillig is requiring its employees *and* clients to comply with all necessary and appropriate social distancing and cleaning/disinfecting protocols.

188.   Defendant Cuomo's Executive Order 202.8, which directed "[e]ach employer [to] reduce the in-person workforce at any work locations by 100%," was neither reasonably necessary, nor the minimum deviation from any suspended statute, law, etc., so as to allow the

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

State of New York to do its part in combatting the COVID-19 pandemic. As an essential business, Plaintiff was not subject to the 100% workforce reduction, and even so, Defendant James has been threatening Plaintiff with further enforcement action even with the non-essential workforce reduction implemented by Plaintiff.

189.   Moreover, from the date of the issuance of Executive Order 202.6 (i.e., March 18, 2020), in the intervening weeks and months, Defendant Cuomo has not revised the restrictions placed on businesses in the State of New York, despite the changing understanding of the nature of the COVID-19 pandemic in the intervening weeks.

190.   Defendant Cuomo's response to the COVID-19 pandemic has not been revised to be more narrowly infringing upon the rights of individuals and businesses located in the State of New York, even in light of the projections being substantially lower than predicted when issuing the Executive Orders.

191.   In fact, Defendant Cuomo has only amplified the restrictions by implementing a COVID-19 contact tracing regime which purports to reduce the spread of disease by monitoring those individuals who have been exposed to COVID-19.

192.   As of June 1, 2020, 1,700 contact tracers were hired in New York to manually trace individuals' identity and location, thereby reinforcing Defendant Cuomo's "emergency" management powers by acting only to assist law enforcement in monitoring those individuals who break and/or violate Defendant Cuomo's quarantine and lockdown rules.

193.   The failure to narrowly tailor the restrictions imposed in the Executive Orders has also caused significant economic and societal harm without sufficient evidence showing that the restrictions on businesses have helped to "flatten the curve," as demonstrated by the approximately forty-one million (41,000,000) individuals throughout the United States who have

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

filed for unemployment benefits to date. Specifically, with respect to Erie County, in which HoganWillig is located, an unprecedented amount of one (1) out of every four (4) individuals, or twenty-five percent (25%) of the working population is currently unemployed.

194.    Income is one of the greatest predictors of health outcomes. The failure to narrowly tailor the restrictions on the population's movement and commerce will likely contribute to greater destruction of our economy, and consequently, even more American lives.

195.    As Plaintiff has demonstrated, limiting in-person interactions to the extent possible, as well as implementing Workforce Reduction and Safety protocols, has allowed HoganWillig to combat the spread of COVID-19, while remaining in business and continuing its operations. This is especially true in light of the evidence being published regarding the high rate of infection and low rate of death for those that have tested positive for COVID-19.

196.    By reason of the foregoing, even assuming, *arguendo*, that Executive Law § 29-a *was* a constitutional delegation of authority to Defendant Cuomo by the New York State Legislature, he exceeded his authority thereunder by directing "[e]ach employer [to] reduce the in-person workforce at any work locations by 100%," particularly given that HoganWillig was designated as an Essential Business by ESD, and further providing that (emphasis added):

> Any essential business . . . *shall not be subject to the in-person restrictions*. An entity providing essential services . . . whether to an essential business or a non-essential business *shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function*.

**k.    Defendant Cuomo's violation of U.S. Const. Art. I, § 10, Clause 3 ("Compact Clause").**

197.    Article I, Section 10, Clause 3 of the United States Constitution, otherwise known as the Compact Clause, establishes that "No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State . . ." *U.S. Const. art. I, § 10*.

{H2633876.1}

**HOGANWILLIG**
Attorneys at Law
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

37

198.    The Compact Clause is intended to restrain individual states' political power, so as to prevent interference with the supremacy of the federal government.

199.    The Compact Clause requires congressional consent should an agreement between States increase the political power in said States, and consequently interfere with the supremacy of the United States.

200.    On or about April 13, 2020, without the approval of Congress, and by his own admission, Defendant Cuomo formed a regional compact, partnership, and/or coalition with Governors of other Northeastern states in an effort to collectively combat the COVID-19 pandemic, and coordinate the re-opening of the region.

201.    While Defendant Cuomo maintained that the pact with neighboring governors was initiated to share resources and information across state lines, this unprecedented regional compact unlawfully permits governors of other states to dictate the COVID-19 mitigation efforts and economic re-opening of the State of New York.

202.    Defendant Cuomo permitted other governors to affect, control, domineer, and direct the public health and safety responsibilities which purportedly belong to Defendant Cuomo alone. Defendant Cuomo's compact with northeastern governors has effectively and unconstitutionally authorized the Governors of neighboring States to institute mandatory restrictions, including the shuttering of schools and closing of non-essential businesses, in New York State and upon New York State citizens.

203.    By reason of the foregoing, Defendant Cuomo has violated his duty as Governor under the Compact Clause of the United States Constitution.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

**l.**   ***Defendant Cuomo's Violation of N.Y. Const. art. IV, § 3, Clause 7 ("Take Care Clause")***

204.   Article IV, Section 3, Clause 7 of the New York State Constitution (the "Take Care Clause") provides that "[t]he Governor . . . shall take care that the laws are faithfully executed." *N.Y. Const. art. IV, § 3.*

205.   The Take Care Clause vests the Governor with the duty to obey the law, and repudiates any notion that he may dispense with the law's execution. *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).

206.   The Take Care Clause thereby underscores the duty of the Executive Branch to not disregard the laws of the Legislature, but to faithfully execute those laws.

207.   The notion that acting in what the Governor believes to be the best interests of the population suspends Constitutional restrictions on the powers of the executive branch of government is legally flawed.

208.   The notion that Constitutional restrictions on the exercise of the power of the Governor are stayed during a crisis, is legally flawed.

209.   The notion that the Constitutions of the United States of America and the State of New York are suspended during times of crisis, is legally flawed.

210.   By virtue of committing violations of the New York State and United States Constitutions, Defendant Cuomo has failed his duty to ensure that the laws are faithfully executed, pursuant to the Take Care Clause of the New York State Constitution.

211.   Defendant Cuomo has invoked, and continues to invoke, his executive powers to change hundreds of existing laws and regulations. In fact, in the two (2) months following Defendant Cuomo's issuance of Executive Order 202 on March 7, 2020, sweeping changes were

{H2633876.1}                                                                                                          39

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

made to State regulations governing hospitals, public health facilities, nursing homes, elections, open meetings, business, court proceedings, as well as mandating social distancing.

212.    As the COVID-19 pandemic grasped the state, the New York State Legislature, as described hereinabove, took an idle position and authorized Defendant Cuomo to issue any directive necessary to cope with the disaster.

213.    Defendant Cuomo has not taken care to ensure that New York State laws are faithfully executed, and instead, has fervidly expanded his power by circumventing the Legislature to issue, to date, forty (40) sweeping Executive Orders.

214.    Defendant Cuomo violated numerous provisions of both New York State and United States Constitutions, and has therefore failed his duty to ensure that the laws are faithfully executed, pursuant to the Take Care Clause of the New York State Constitution.

### m.  Impact of Defendant Cuomo's Executive Orders on the New York State Economy.

215.    In addition to the significant negative impact upon the physical and mental health of New York State residents, particularly those in the Western New York Region, and the numerous violations of Plaintiff's constitutional rights as secured by the New York State and United States Constitutions, Defendant Cuomo's Executive Orders have had a profoundly disastrous impact upon the New York State economy, and those businesses that ordinarily serve as the backbone thereof, including Plaintiff.

216.    The following industries are just some examples of the sectors that have been, and will only continue to be, significantly damaged by Defendant Cuomo's continuing Executive Orders during the COVID-19 pandemic:

        a.  <u>Education</u>. Taking the power to make such decisions away from duly elected school boards and the rightful leadership of private schools, Defendant

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

Cuomo decreed on Friday, May 1, 2020, all K-12 schools and college facilities statewide will now remain closed through the remainder of the academic year, depriving millions of individuals of upwards of six (6) months of schooling, when studies have shown the benefit upon human development for those individuals to attend in-person classes. In addition, the cancellation of the SAT, ACT, and Regents Exams for high school students throughout the State of New York has altered the course of the students' education, and affected the ability of those students to get into college programs, without having taken the requisite coursework and entrance exams.

b. <u>Restaurants</u>. Although Defendant Cuomo and ESD have designated restaurants "Essential Businesses" for purposes of Executive Order 202 *et seq.*, this designation extends only so far as to allow restaurants to provide take-out and/or delivery services. This restriction has caused a large percentage of restaurants, many of which are locally owned and operated, to close their doors forever, with millions of dollars of food going to waste. Relatedly, many multi-generational family farms located throughout the State of New York, including many here in Western New York, can no longer afford to operate with the decreased demand for agricultural products caused by restaurant closures, and have shut their doors forever.

c. <u>Retail Clothing</u>: The retail clothing industry is experiencing massive job losses and drops in sales. As a result, some of the largest industry operators are applying for federal aid to stay afloat during the COVID-19 pandemic. In

**H**OGAN**W**ILLIG
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

addition, many department stores have stated publicly that it is their intention to file bankruptcy due to COVID-19.

d. <u>Transportation and Warehousing</u>: The transportation and warehousing industry has suffered a severe decline in demand from both commercial and consumer markets. Commercial transportation and warehousing industries typically mimic broader economic performance in the United States; however, as the Governor's Executive Orders have reduced manufacturing output and consumer confidence alike, demand from most commercial sectors will be reduced. Similarly, the scenic and sightseeing transportation sector has seen a slump in revenue due to fewer international and domestic tourists, as has the air transportation sector, as fewer and fewer individuals are traveling.

e. <u>Finance and Insurance</u>. Merchant payment processing volumes for e-commerce and non-supermarket brick-and-mortar stores declined in March as a result of consumers being unable to go to non-essential stores, as well as some consumers reconsidering *any* discretionary e-commerce purchases. Credit and debit card spending at restaurants and on travel and entertainment have also both declined well over fifty percent (50%) in March as a result of shutdowns and travel restrictions. Equity underwriting similarly declined in March, as businesses delayed their plans of IPO's until market conditions stabilized.

f. <u>Manufacturing</u>. Sharp declines in consumer demand will adversely affect the manufacturing industry throughout the State of New York and the United States. Manufacturers of goods such as automobiles, washing machines, and

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

furniture are expected to get hit the worst, as such purchases are a burden on most households even in the best of times, and are often made on credit.

g.  <u>Construction</u>. Nearly all construction activity in the State of New York, except in very limited circumstances, has been and continues to be effectively stopped, despite originally having been designated as essential.

h.  <u>Real Estate, Rental, and Leasing</u>. Due to continued mandated social distancing and the continued limitations imposed on gathering sizes, real estate showings and open house events have been canceled. If industry operators cannot lease or sell properties, industry revenue will decelerate and decline. Moreover, given the large percentage of businesses shuttered by the Executive Orders, and the related unprecedented rise in unemployment, residential and nonresidential renters alike do not have the cash flow to afford their rent and/or other debt obligations, which will ultimately result in waves of evictions and foreclosures following the cessation of the COVID-19 pandemic.

i.  <u>Professional, Scientific, and Technical Services</u>. Most professional service firms (including law firms such as Plaintiff HoganWillig) are expected to provide their services remotely, and, coupled with the cessation of most economic activity, the output has been severely curtailed; the productivity of Plaintiff is estimated at less than fifty percent (50%) of what it was prior to the issuance of the Executive Orders.

j.  <u>Entertainment</u>. In addition to virtually all professional sporting events having been either cancelled or postponed indefinitely (resulting in massive layoffs),

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

here, the Governor's Executive Orders have also shuttered business venues throughout the entertainment industry, including live professional and local theater, movie theaters, opera, dance, philharmonics, bar/tavern venues and youth sports of all kinds.

**AS AND FOR A FIRST CLAIM FOR RELIEF:**
**DECLARING N.Y.S. EXECUTIVE LAW § 29-A TO BE UNCONSTITUTIONAL**

217.    Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

218.    The New York State Constitution provides for a distribution and complete separation of powers among the three "co-ordinate and co[-]equal branches" of government: the executive, the legislature, and the judiciary. *County of Oneida v. Berle*, 49 N.Y.2d 515, 522 (1980); *see also LaGuardia v. Smith*, 288 N.Y. 1, 5-6 (1942); *N.Y. Const., art. III, sec. 1; art. IV, sec. 1;* and *art. VI*.

219.    In the context of the New York State Constitution, "the separation of powers 'requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies.'" *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 821-822 (2003) (quoting *Bourquin v. Cuomo*, 85 N.Y.2d 781, 784 (1995)).

220.    New York State Executive Law § 29-a purports to grant Defendant Cuomo legislative authority vis-à-vis his claimed authority to issue Executive Orders in response to the COVID-19 pandemic having the full force and effect of law.

221.    Under the guise of Executive Law § 29-a, the New York State Legislature has unconstitutionally delegated its legislative authority to Defendant Cuomo, as it has granted

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

Defendant Cuomo limitless and standardless discretion to issue Executive Orders having the force and effect of law.

222.     Accordingly, Plaintiff seeks a declaration of this Court providing New York State Executive Law § 29-a to be facially and substantively unconstitutional, as an unconstitutional delegation of legislative power to Defendant Cuomo by the New York State Legislature.

## AS AND FOR A SECOND CLAIM FOR RELIEF:
## DEFENDANTS' VIOLATION OF N.Y.S. EXECUTIVE LAW § 29-A

223.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

224.     New York State Executive Law § 29-a provides that "[t]he governor may by executive order temporarily suspend . . . any statute, local law, ordinance, or orders, rules or regulations . . . during a state disaster emergency, if compliance . . . would prevent, hinder, or delay action necessary to cope with the disaster."

225.     New York State Executive Law § 29-a purports to grant Defendant Cuomo, by the issuance of Executive Order(s), emergency powers so as to suspend certain laws, and so as issue certain directives, when a State Disaster Emergency has been declared.

226.     Although Executive Law § 29-a confers certain powers upon Defendant Cuomo (assuming, *arguendo*, it is constitutional), it also imposes certain restrictions upon him; namely, that actions taken pursuant to Defendant Cuomo's authority thereunder be "reasonably necessary to aid in the disaster effort," and that such actions provide for the "minimum deviation" from the suspended statute, law, etc., while remaining consistent with the goals of the disaster action.

227.     Defendant Cuomo has, to date, issued forty (40) Executive Orders modifying or suspending laws, and issuing directives, since declaring a State Disaster Emergency on March 7, 2020. Executive Orders 202.6 and 202.8, issued March 18, 2020 and March 20, 2020, directed

**HOGAN WILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

"[e]ach employer [to] reduce the in-person workforce at any work locations by 100%," effectively suspending the practice of private business in the State of New York, unless said business received a designation as an Essential Business from ESD, on behalf of Defendant Cuomo.

228.    Defendants' actions in issuing the Executive Orders, and in subsequently attempting to enforce same as against HoganWillig, were neither reasonably necessary, nor the minimum deviation from any suspended statute, law, etc., so as to allow the State of New York to do its part in combatting the COVID-19 pandemic and promoting public safety.

229.    Moreover, from the date of the issuance of Executive Order 202.6, Defendant Cuomo has not revised the restrictions placed on businesses in the State of New York, despite the changing understanding of the nature of the COVID-19 pandemic in the intervening weeks.

230.    While Executive Order 202.6 lasted for less than thirty (30) days as required by Executive Law § 29-a(2)(a), Defendant Cuomo has now extended his emergency restrictions to last at least fifty-eight (58) days as of the filing of this Amended Complaint.

231.    Given the evolving understanding of the COVID-19 pandemic, these extensions failed to reconsider the relevant facts and circumstances by extending the terms of Executive Order 202.6, which was initially considered over greater than one (1) month ago, without narrowly tailoring them to what is reasonably necessary to aid in the disaster effort, or to be the minimum deviation from any suspended law, statute, regulation, or the like.

232.    By reason of the foregoing, Defendant Cuomo has far exceeded his executive authority under Executive Law § 29-a, even by the standards set forth by the Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

233.    Accordingly, Plaintiff seeks a declaration of this Court providing that Defendant Cuomo's actions exceed the scope of his powers under New York State Executive Law § 29-a to the extent it is legal, and not found by this Court to be unconstitutional.

### AS AND FOR A THIRD CLAIM FOR RELIEF:
### VIOLATION OF ART. I, SEC. 8 OF THE U.S. CONSTITUTION UNDER 42 U.S.C. § 1983

234.    Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

235.    The Commerce Clause of the United States Constitution provides that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." *U.S. Const. art. I, sec. 8, cl. 3*.

236.    The Supreme Court has interpreted the so called "Dormant Commerce Clause" into this Section of the United State Constitution as a prohibition against states passing legislation that discriminates against, or otherwise excessively burdens, interstate commerce. *See, e.g.*, *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 669-70 (1981).

237.    By taking the above actions, Defendants have discriminated against, and placed an excessive burden upon, HoganWillig, which engages in interstate commerce, as Defendants have restricted the conduct of business in order to combat COVID-19 and promote public safety.

238.    Accordingly, HoganWillig seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders, as any such enforcement would impede Plaintiff's representation of clients as protected under the Commerce Clause of the United States Constitution.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

## AS AND FOR A FOURTH CLAIM FOR RELIEF:
## <u>VIOLATION OF ART. I, SEC. 10 OF U.S. CONSTITUTION UNDER 42 U.S.C. § 1983</u>

239.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

240.     The Contracts Clause of the United States Constitution provides, among other things, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." *U.S. Const. art. I, sec. 10, cl. 1.*

241.     The Supreme Court has interpreted the Contracts Clause to prevent the government from interfering with contracts between private parties, and has applied this limitation to the individual state governments. *See, e.g., U.S. v. Winstar Corp.*, 518 U.S. 839 (1996) (citing *Fletcher v. Peck,* 10 U.S. 87 (1810)).

242.     Defendants' actions have impeded HoganWillig's ability to perform under legal contracts with clients of HoganWillig and other third parties with which the firm has contracted.

243.     Plaintiff is a law firm contracted to perform legal services for clients, many of which are "essential" under ESD's Guidance.

244.     While Plaintiff's employees may work remotely for some matters, client comfort, security of non-public information, and attorney-client privilege factors require accessibility to HoganWillig's office, as well as in-person meetings with Plaintiff's clients, to fulfill its obligation under the contracts to which it is a party.

245.     Accordingly, Plaintiff seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders to the extent that any such enforcement would impede HoganWillig's private contracts with client and third parties.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

## AS AND FOR A FIFTH CLAIM FOR RELIEF:
## <u>VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983</u>

246.    Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

247.    The Fifth and Fourteenth Amendments to the United States Constitution require, among other things, that the Federal and State governments may not deprive any person of life, liberty, or property without due process of law. *See U.S. Const. amends. V* and *XIV.*

248.    Substantive Due Process is a form of due process recognized by the Supreme Court of the United States, and allows courts to strike down laws that are unreasonable or arbitrary or without relation to the purpose of the legislation. *See Nebbia v. New York*, 291 U.S. 502 (1934).

249.    Here, the relevant Executive Orders are unreasonable and arbitrary, as Defendants have deemed HoganWillig an Essential Business, and yet are limiting HoganWillig's ability to conduct business despite its Workforce Reduction and Safety Protocols, which were prepared and implemented to follow all necessary social distancing, sanitizing, and face covering directives.

250.    Other businesses deemed essential, including, but not limited to, Home Depots, Lowes, and liquor stores, allow the general public to walk into their stores and come into contact with each other, and have not been forced to limit these interactions.

251.    HoganWillig is able to effectively limit contact with outsiders to its clients, and to keep clients in separate rooms, which are sanitized between visits.

252.    Such limitations on HoganWillig that are not imposed on other essential businesses and industries are arbitrary and not reasonably related to the purpose of preventing the spread of COVID-19, the stated purpose of the Executive Orders.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

253.     Accordingly, HoganWillig seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on HoganWillig in violation of HoganWillig's Fifth and Fourteenth Amendment rights.

### AS AND FOR A SIXTH CLAIM FOR RELIEF:
### VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983

254.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

255.     Procedural Due Process is a form of due process recognized by the Supreme Court of the United States, and protects the loss of liberties or property interests without the benefit of a fair procedural process. *See Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

256.     Here, following the exchange of emails and phone calls with Defendant James via AAG Foshee, Defendant James ordered HoganWillig to cease all or most of its operations.

257.     However, Defendants have now ordered HoganWillig to cease all or most of its operations without any sort of hearing or formal procedure.

258.     Accordingly, HoganWillig seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on HoganWillig in violation of HoganWillig's Fifth and Fourteenth Amendment rights.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF:
### VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983

259.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

260.    The Takings Clause of the Fifth Amendment to the United States Constitution "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536-37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315 (1987)).

261.    The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster-and that such 'regulatory takings' may be compensable under the [Takings Clause of the] Fifth Amendment." *Lingle,* 544 U.S. at 537.

262.    "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415- 16 (1922).

263.    In the alternative, under the framework articulated by the Supreme Court in *Penn Central,* Defendant Cuomo's Executive Orders constitutes a taking based upon "the magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[] with legitimate property interests." *Lingle,* 544 U.S. 528 at 540.

264.    Plaintiff has suffered a loss of "all economically beneficial uses" of its Property while Defendant Cuomo's Executive Orders remain in effect. This loss constitutes a categorical taking, whether it be Plaintiff's inability to profitably operate at its physical locations, or its inability to exercise any of its other property rights with regard to its tangible property. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1019 (1992).

265.    Defendant Cuomo's Executive Orders constitute a regulatory taking implemented for a public purpose, and the failure to pay just compensation contravenes the Takings Clause of

**H**OGAN**W**ILLIG
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

the Fifth and Fourteenth Amendments. *Coalition for Gov't Procurement v. Fed. Prison Indus.,* 365 F.3d 435, 478 (6th Cir. 2004); *see also Horne v. Dep't of Agric.,* 576 U.S. 350 (2015).

266.     Accordingly, Plaintiff seeks: a declaration that the issuance and enforcement of the Executive Orders is an unconstitutional taking without just compensation under the Fifth and Fourteenth Amendment; a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on HoganWillig in violation of HoganWillig's Fifth and Fourteenth Amendment rights; and compensatory damages adequate to justly compensate HoganWillig or the regulatory taking of its Property.

### AS AND FOR AN EIGHTH CLAIM FOR RELIEF:
### VIOLATION OF FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983

267.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

268.     When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires at least a rational basis for such disparate treatment, so as to ensure that all persons subject to legislation or governmental regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

269.     As other states are relaxing restrictions based on new data that is emerging, Defendants are not, and are discriminating against identically situated businesses without any rational basis, in direct violation of Plaintiff's Fourteenth Amendment Equal Protection rights.

270.     Law firms around the State of New York, and the several states in the United States of America, are free to continue to operate, whereas Defendant James, through AAG Foshee, ostensibly to enforce Defendant Cuomo's Executive Orders, is preventing Plaintiff from so operating, under threat of a Cease and Desist order, and civil and criminal penalties.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

271.    There is no rational basis for the disparate treatment of Plaintiff by Defendants as compared to identically situated businesses, both within and without the State of New York.

272.    Moreover, there exists no substantial difference in the COVID-19 infection rate throughout the State of New York that would otherwise justify Defendants' targeting of Plaintiff in the instant enforcement action.

273.    The actions of Defendants' are thus in direct violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

274.    Accordingly, HoganWillig seeks a declaration that the issuance and enforcement of the Executive Orders violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on HoganWillig in violation of HoganWillig's Fourteenth Amendment rights.

### AS AND FOR A NINTH CLAIM FOR RELIEF:
### VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42. U.S.C. § 1983

275.    Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

276.    The Supreme Court, in *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926), stated in relevant part: "[T]he terms of a penal statute . . . must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties… and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

277.    The Court confirmed in *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), that where a law fails to specifically enumerate the practices that are either required or forbidden, such that an "ordinary citizen" does not know what the law requires, said law is void for vagueness.

278.    Defendant Cuomo's Executive Orders, and Defendant James' purported enforcement thereof, failed to sufficiently specify prohibited conduct, such that a person of ordinary intelligence would be able to interpret said statutes correctly.

279.    Accordingly, HoganWillig seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing such vague and arbitrary restrictions as against HoganWillig, in direct violation of HoganWillig's Fifth and Fourteenth Amendment rights.

## AS AND FOR A TENTH CLAIM FOR RELIEF:
## <u>VIOLATION OF NINTH AND TENTH AMENDMENTS UNDER 42 U.S.C § 1983</u>

280.    Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

281.    The Ninth Amendment to the United States Constitution establishes that the enumeration in the Constitution of specific rights shall not be construed in order to deny or disparage the rights retained by the American people. *See U.S. Const. amend. IX*.

282.    The Tenth Amendment to the United States Constitution establishes that the powers not delegated to the States by the Unites States Constitution, nor prohibited by the United States Constitution to the States, are reserved to the States respectively, or to the American people. *See U.S. Const. amend. X*.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

283.    Defendants' Executive Orders, restrictions, regulations, policies, practices, acts, and omissions throughout the COVID-19 pandemic are a violation of Plaintiff's rights under the Ninth and Tenth Amendments of the United States Constitution.

284.    As a proximate result of Defendants' unconstitutional issuance of the aforementioned Executive Orders, of State and local agencies, Plaintiff is presently suffering, and will only continue to suffer, a significant deprivation of its liberty and property interests.

285.     Plaintiff, other than as set forth in this Amended Complaint, has no adequate remedy at law to address the wrongs described hereinabove. The declaratory and injunctive relief sought by HoganWillig is thus necessary to prevent continued and future harm and injury.

286.    Accordingly, HoganWillig seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on HoganWillig in violation of the Ninth and Tenth Amendments to the United States Constitution.

### AS AND FOR AN ELEVENTH CLAIM FOR RELIEF: <br> VIOLATION OF TAKE CARE CLAUSE UNDER N.Y. CONST. ART. IV, § 3

287.    Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

288.    The Take Care Clause of the New York State Constitution establishes: "The governor shall expedite all such measures as may be resolved upon by the legislature, and shall take care that the laws are faithfully executed." N.Y. Const. art. IV, § 3.

289.     By virtue of committing violations of the New York State and United States Constitutions, Defendant Cuomo has failed his duty to ensure that the laws are faithfully executed, pursuant to the Take Care Clause of the New York State Constitution. Defendant Cuomo has not taken care to ensure that New York State laws are faithfully executed, and

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

instead, has fervidly expanded his power by circumventing the Legislature to issue, to date, forty (40) sweeping Executive Orders.

290.     Accordingly, Plaintiff seeks a declaration of this Court providing that Defendant Cuomo violated the duty vested to him by virtue of his official capacity as Governor to ensure that the laws are faithfully executed pursuant to N.Y. Const. art. IV, § 3.

**AS AND FOR A TWELFTH CLAIM FOR RELIEF:**
**VIOLATION OF THE COMPACT CLAUSE**

291.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

292.     The Compact Clause provides that, in relevant part, as follows: "[n]o State shall . . . without the consent of Congress . . . enter into any agreement or compact with another state . . . " U.S. Const. Art. I, § 10 ("Compact Clause")

293.     On or about April 13, 2020, without the approval of Congress, Defendant Cuomo formed a regional compact, partnership, and/or coalition with governors of other Northeastern states, which unlawfully permits governors of other states to dictate the COVID-19 mitigation efforts and economic reopening of New York State.

294.     Defendant Cuomo permitted other governors to control, domineer and direct the public health and safety responsibilities which belong to Defendant Cuomo alone.

295.     Accordingly, Plaintiff seeks a declaration of this Court providing that Defendant Cuomo violated the Compact Clause of the United States Constitution, as well as a permanent injunction permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from continuing to engage in any and all compacts, coalitions, or other agreements with Governors of other states absent approval from the United States Congress.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF:
### ATTORNEY'S FEES AND COSTS UNDER 42 U.S.C § 1988

296.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Amended Complaint, as if fully set forth herein.

297.    42 U.S.C. § 1988(b) provides, in relevant part, as follows: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

298.    The Supreme Court, in *Hutto v. Finney*, 437 U.S. 678 (1978), affirmed the Court's discretion to award attorney's fees to the prevailing party under 42 U.S.C. § 1988, in actions where a plaintiff is seeking redress for the deprivation of constitutional rights under 42 U.S.C. § 1983.

299.    Here, Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief are each brought to enforce a provision of 42 U.S.C. § 1983 – namely, that, under color of State law, Defendants have subjected HoganWillig to the egregious deprivation of certain rights, privileges, and immunities secured by the United States Constitution. *See 42 U.S.C. § 1983*.

300.    These rights include HoganWillig's right to be free from State government interference in interstate commerce under Article I, Section 8, Clause 3 of the United States Constitution, HoganWillig's right to be free from State government interference in private contracts under Article I, Section 10, Clause 1 of the United States Constitution, HoganWillig's right to substantive and procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution, HoganWillig's right to be free government interference with its property rights under the Takings Clause of the Fifth Amendment to the United States

{H2633876.1}

**HOGANWILLIG**
Attorneys at Law
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

57

Constitution, and HoganWillig's right to be free from government interference with its rights under the Ninth and Tenth Amendment to the United States Constitution.

301.     Accordingly, HoganWillig seeks its reasonable attorney fees as part of its costs in seeking redress for the deprivation of its constitutional rights under 42 U.S.C. § 1983.

**WHEREFORE**, HoganWillig demands judgment as follows:

a.  On its First Claim for Relief, that this Court issue and enter a declaratory judgment, pursuant to 28 USC § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that New York State Executive Law § 29-a is unconstitutional, as an unconstitutional delegation of legislative authority to Defendant Cuomo;

b.  On its Second Claim for Relief, that this Court enter an Order declaring that Defendant Cuomo's actions exceed the scope of his authority under New York State Executive Law § 29-a, and that such actions are an unconstitutional abuse of Defendant Cuomo's executive powers thereunder;

c.  On its Third Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders, as any such enforcement would unconstitutionally impede Plaintiff's representation of clients and would unduly and excessively burden interstate commerce;

d.  On its Fourth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders, as any such enforcement

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**

would unconstitutionally impede HoganWillig's private contracts with clients, independent contractors, vendors, and other third parties;

e.   On its Fifth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders as arbitrary restrictions on HoganWillig, in violation of Plaintiff's Fifth and Fourteenth Amendment substantive due process rights;

f.   On its Sixth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders as arbitrary restrictions on HoganWillig, in violation of HoganWillig's Fifth and Fourteenth Amendment procedural due process rights under the United States Constitution;

g.   On its Seventh Claim for Relief, that this Court enter an Order declaring that the issuance and enforcement of the Executive Orders is an unconstitutional taking without just compensation under the Fifth and Fourteenth Amendment; a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on HoganWillig in violation of HoganWillig's Fifth and Fourteenth Amendment rights; and compensatory damages adequate to justly compensate HoganWillig for the regulatory taking of its Property;

h.   On its Eighth Claim for Relief, that this Court enter an Order declaring that the issuance and enforcement of the Executive Orders violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment, and

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders as arbitrary restrictions on HoganWillig, in violation of HoganWillig's Fourteenth Amendment equal protection rights under the United States Constitution;

i.  On its Ninth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders as arbitrary restrictions on HoganWillig, in violation of the Void for Vagueness Doctrine of the Fifth and Fourteenth Amendments under the United States Constitution

j.  On its Tenth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable government/law enforcement authorities, from enforcing the Executive Orders as arbitrary restriction on HoganWillig, in violation of the Ninth and Tenth Amendments of the United States Constitution;

k.  On its Eleventh Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable government/law enforcement authorities, from enforcing the Executive Orders as arbitrary restriction on HoganWillig, in violation of the Take Care Clause under the New York State Constitution;

l.  On its Twelfth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable government/law enforcement authorities, from enforcing the Executive Orders as arbitrary restriction on

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

HoganWillig, in violation of the Compact Clause of the United States Constitution;

m.  On its Thirteenth Claim for Relief, that this Court enter an Order awarding Plaintiff its reasonable attorney's fees pursuant to 42 U.S.C. § 1988, for Plaintiff's seeking redress for Defendants' violation of HoganWillig's constitutional rights under 42 U.S.C. § 1983; and

n.  Such other and further relief as this Court may deem just and proper.

DATED: June 8, 2020

/s/ Corey J. Hogan, Esq.
Corey J. Hogan, Esq.
**HOGANWILLIG, PLLC**
*Attorneys for Plaintiff*
2410 North Forest Road, Suite 301
Amherst, New York 14068
(716) 636-7600

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
**Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com**