UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HOGANWILLIG, LLPC

                         Plaintiffs,

                                                          Docket No.: 20-cv-000577

            v.

LETITIA JAMES, in her official capacity as the
Attorney General for the State of New York, and

ANDREW M. CUOMO, in his official capacity as
the Governor of the State of New York,

                         Defendants.
-------------------------------------------------------------------X


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

                              LETITIA JAMES
                              Attorney General of the State of New York
                              Attorney for Defendants
                              Main Place Tower, Suite 300
                              350 Main Street,
                              Buffalo, New York 14202


**Of Counsel:**
Kathleen M. Kaczor
Joel J. Terragnoli
George Michael Zimmermann
*Assistant Attorneys General*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

    A.    The COVID-19 public health emergency and Defendants' response. .......................... 2

    B.    Plaintiff's Allegations ................................................................................................... 5

    C.    New York Forward ...................................................................................................... 10

STANDARD OF REVIEW .................................................................................................. 10

ARGUMENT ........................................................................................................................ 11

    I.    THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS .................. 11

    A.    Plaintiff Lacks Standing. ............................................................................................. 11

    B.    Plaintiff's Claims are Moot. ....................................................................................... 14

    C.    Plaintiff's Claims are Not Ripe. ................................................................................. 16

    D.    Sovereign Immunity Bars Plaintiff's Claims.............................................................. 17

    II.    PLAINTIFF'S CLAIMS FAIL UNDER *JACOBSON* AND ITS PROGENY .............. 21

    III.    STATE-LAW CHALLENGES TO EXECUTIVE LAW § 29-a FAIL......................... 23

    IV.    PLAINTIFF'S COMMERCE CLAUSE CLAIM FAILS ............................................ 26

    V.    PLAINTIFF'S CONTRACT CLAUSE CLAIM IS MERITLESS................................ 29

    VI.    PLAINTIFF HAS NOT STATED A SUBSTANTIVE DUE PROCESS CLAIM ....... 32

    VII.    PLAINTIFF HAS NOT STATED A PROCEDURAL DUE PROCESS CLAIM........ 33

    VIII.    PLAINTIFF HAS NOT STATED A TAKINGS CLAUSE CLAIM ............................ 35

    IX.    PLAINTIFF HAS NOT STATED AN EQUAL PROTECTION CLAIM.................... 37

    X.    THE EO'S ARE NOT UNCONSTITUTIONALLY VAGUE ...................................... 40

    A.    Plaintiff has not Plausibly Alleged the EOs Are Unconstitutionally Vague as Applied to its own Business Operations................................................................................... 41

    B.    Plaintiff is Precluded from Raising a Facial Vagueness Challenge. .......................... 43

    XI.    PLAINTIFF'S NINTH AND TENTH AMENDMENT CLAIMS FAIL...................... 43

    XII.    PLAINTIFF'S CLAIM UNDER THE COMPACT CLAUSE FAILS.......................... 44

    XIII.    PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES MUST BE DISMISSED ............ 47

CONCLUSION..................................................................................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrahams v. State of Conn. Dep't of Soc. Servs.,*
  No. 3:16-cv-00552, 2018 WL 995106 (D. Conn. Feb. 21, 2018)......................................43-44

*Allied Structure Steel Co. v. Spannaus,* 438 U.S. 234 (1978) ........................................30

*Aliev v. U.S.P.S.,*
  No. 19-cv-1156, 2020 WL 1956301 (W.D.N.Y. Apr. 23, 2020)........................................10-11

*Altman v. Cnty. of Santa Clara,*
  No. 20-cv-02180, 2020 WL 2850291 (N.D. Cal. Jun. 2, 2020) ...............................................22

*Amato v. Elicker,*
  No. 3:20-cv-464, 2020 WL 2542788 (D. Conn. May 19, 2020) .............................3, 13, 15, 22

*Anderson v. Cameron,*
  No. 13-cv-578V, 2016 WL 11259015 (W.D.N.Y. Sept. 14, 2016)...................................30, 35

*Antietam Battlefield KOA v. Hogan,*
  No. 20-cv-1130, 2020 WL 2556496 (D. Md. May 20, 2020)...................................................27

*Artemov v Ramos,*
  No. 18-cv-2537, 2018 WL 2121595 (E.D.N.Y. 2018) ............................................................47

*Ass'n of Jewish Camp Operators v. Cuomo,*
  No. 1:20-cv-0687, 2020 WL 3766496 (N.D.N.Y. Jul. 6, 2020)...............................................22

*Azim v. Vance,*
  530 Fed. App'x 44 (2d Cir. 2013)............................................................................................12

*Buffalo Teachers Fed. v. Tobe,*
  464 F.3d 362 (2d Cir. 2002)...............................................................................................30, 35

*C & A Carbone, Inc. v. County of Rockland, NY,*
  No. 08-cv-6459-ER, 2014 WL 1202699 (S.D.N.Y. Mar. 24, 2014) .................................27, 28

*Calgary Chapel of Bangor v. Maine,*
  No. 1:20-cv-00156, 2020 WL 2310913 (D. Me. May 9, 2020)...............................................29

*Cameron v. Beshear,*
  No. 3:20-cv-00023, 2020 WL 2573463 (E.D. Ky. May 21, 2020)...........................................15

*Cassell v. Snyders,*
  No. 20-cv-50153, 2020 WL 2112374 (D. Ill. May 3, 2020)..............................................16, 20

*CFCU Cmty Credit Union v. Hayward,*
    552 F.3d 253 (2d Cir. 2009)......................................................................................................30

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002).......................................................................................................6

*Chrebet v. Cnty. of Nassau,*
    24 F.Supp.3d 236 (E.D.N.Y. 2014) .........................................................................................34

*Citizens for Orderly Energy Policy, Inc. v Cuomo,*
    78 N.Y.2d 398 (1991) ...............................................................................................................24

*Citizens Union of the State of New York v. Attorney General of the State of New York,*
    No. 16-cv-9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017) ......................................... 18-19

*Cloverleaf Butter Co. v. Patterson,*
    315 U.S. 148 (1942)..................................................................................................................29

*College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S.
    666 (1999) .................................................................................................................................33

*Connolly v. Pension Benefit Guar. Corp.,*
    475 U.S. 211 (1986)..................................................................................................................37

*Cross Culture Christian Center v. Newsom,*
    No. 2:20-cv-00832, 2020 WL 212111 (E.D. Cal. May 5, 2020)..........................................3, 15

*Cross Culture Christian Ctr. v. Newsom,*
    No. 2:20-cv-00832, 2020 WL 2121111 (E.D. Cal. May 5, 2020) .............................................3

*Daimler Chrysler Corp. v. Cuno,*
    547 U.S. 332 (2006)..................................................................................................................11

*Dark Storm Industries v. Cuomo,*
    No. 1:20-cv-0360, 2020 WL 3833107 (N.D.N.Y. July 8, 2020) ..............................................12

*Davis v. Federal Election Comm'n.*
    554 U.S. 724 (2008)..................................................................................................................11

*Degale v. McDonough,*
    No. 16-cv-9905, 2018 WL 2943224 (S.D.N.Y. Jun. 12, 2018)................................................12

*Delaware Riverkeeper Network v. New York State Dep't of Envt'l. Conserv.,*
    788 Fed. App'x 65 (2d Cir. 2019).............................................................................................14

*Dickerson v. Napolitano,*
    604 F.3d 732 (2d Cir. 2010)......................................................................................................43

*E.I. Dupont De Nemours Co. v. Invista,*
    473 F.3d 44 (2d Cir. 2006)...................................................................................................16

*Elmsford Apt. Assoc., LLC v. Cuomo,*
    No. 20-cv-4062, 2020 WL 3498456 (E.D.N.Y. Jun. 29, 2020)...........................................18, 19

*Energy Reserves Group, Inc. v. Kansas Power & Lighting Co.,* 459 U.S. 400
    (1983) ...................................................................................................................................30

*Exxon Corp. v. Governor of Md.,*
    437 U.S. 117 (1978)..............................................................................................................27

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006)............................................................................................ 40-41

*Flynt v. Weinberger,*
    762 F.2d 134 (D.C. Cir. 1985)..............................................................................................16

*Freedom Holdings, Inc. v. Spitzer,*
    357 F.3d 205 (2d Cir. 2004)............................................................................................26, 28

*Friends of Danny DeVito v. Wolf,*
    2020 WL 1847100 (Pa. Apr. 13, 2020) ...........................................................................29, 37

*Geller v. DeBlasio,*
    No. 20-cv-3566, 2020 WL 2520711 (S.D.N.Y. May 18, 2020) ..............................................21

*Giano v. Senkowski,*
    54 F.3d 1050 (2d Cir. 1995)..................................................................................................37

*Giraldo v. Kessler,*
    694 F.3d 161 (2d Cir. 2012)....................................................................................................2

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
    425 F.3d 158 (2d Cir. 2005)..................................................................................................26

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972)..............................................................................................................40

*Hall v. Beals,*
    396 U.S. 45 (1969)................................................................................................................14

*Harmon v. Markus,* 412 Fed App'x 420 (2d Cir. 2011) ..............................................................30

*Hartman v. Acton,*
    No. 2:20-cv-1952, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020)..........................................20

*Hawkins v 1115 Legal Serv. Care,*
    163 F.3d 684 (2d Cir. 1998)..................................................................................................47

*Hellenic Am. Neighborhood Cmty. v. City of New York,*
  101 F.3d 877 (2d Cir. 1996)....................................................................................................34

*Hirsch v. Arthur Anderson & Co.,*
  72 F.3d 1085 (2d Cir. 1995)....................................................................................................36

*Hobbs v. County. of Westchester,*
  No. 00-cv-8179, 2003 WL 21919882 (S.D.N.Y. Aug. 13, 2003) aff'd 397 F.3d
  133 (2d Cir. 2005)....................................................................................................................34

*In re Abbott,*
  954 F.3d 696 (5th Cir. 2020) ........................................................................................ 18, 22-23

*In re Rutledge,*
  956 F.3d 1018 (8th Cir. 2020) ................................................................................................23

*Jacobson v. Commonwealth of Massachusetts,*
  197 U.S. 11 (1905)...................................................................................................................21

*Jenkins v. C.I.R.,*
  483 F.3d 90 (2d Cir. 2007).......................................................................................................43

*Johnson v Pataki,*
  91 N.Y.2d 214 (1997) ..............................................................................................................25

*Kabrovski v. City of Rochester,*
  149 F. Supp. 3d 413 (W.D.N.Y. 2015) ............................................................................. 36-38

*Kassel v. Consol. Freightways Corp.,*
  450 U.S. 662 (1981).................................................................................................................28

*Kay v Ehrler,*
  499 U.S. 432 (1991).................................................................................................................47

*Kelly v. New York State Civil Serv. Comm'n.,*
  632 Fed. App'x 17 (2d Cir. 2016)............................................................................................18

*Kenmore Mercy Hosp. v. Daines,*
  No. 09-cv-162, 2011 WL 4368564 (W.D.N.Y. Sept. 18, 2011)....................................... 38-39

*League of Indep. Fitness Fac. & Trainers, Inc. v. Whitmer,*
  No. 20-cv-1581, 2020 WL 3468281 (6th Cir. June 24, 2020)........................................... 21-22

*Liberian Cmty. Assn. of Connecticut v. Malloy,*
  No. 3:16-cv-00201, 2017 WL 4897048 (D. Conn. Mar. 30, 2017) .........................................13

*Lighthouse Fellowship Church v. Northam,*
  No. 2:20-cv-204, 2020 WL 2614626 (E.D. Va. May 21, 2020)........................................18, 29

*Lucas v. S.C. Coastal Council,*
  505 U.S. 1003 (1992)............................................................................37

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992).........................................................................11, 13

*Makarova v. United States,* 201 F.3d 110 (2d Cir. 2020) .............................10

*Manigault v. Springs,* 199 U.S. 473 (1905) ................................................37

*Mariana v. Fischer,*
  338 F.3d 189 (3d Cir. 2003), cert. denied, 540 U.S. 1179 (2004) ...........45

*Matter of LeadingAge NY, Inc. v Shah,*
  32 N.Y.3d 249 (2018) ...................................................................24, 25

*Matter of NYC C.L.A.S.H. v. N.Y. State Office of Parks, Recreation & Historic*
  *Pres.,* 27 N.Y.3d 174 (2016) ...............................................................24

*Matter of Overhill Bldg. Co. v Delany,* 28 N.Y.2d 449 (1971) ....................25

*Matter of Kayfield Constr. Corp. v. Morris,* 15 A.D.2d 373 (1st Dep't 1962) ............................26

*McCarthy v. Cuomo,*
  No. 20-cv-2124, 2020 WL 3286530 (E.D.N.Y. Jun. 18, 2020)...........20, 22

*McGhee v. City of Flagstaff,*
  No. 20-cv-08081, 2020 WL 2309881 (D. Ariz. May 8, 2020)...................3

*Mercer v. Cuomo,*
  No. 1:11–cv–0232, 2011 WL 3876310 (N.D.N.Y. Aug. 31, 2011) .........17

*Mintz & Gold LLP v. Daibes,*
  No. 15-cv-1218, 2015 WL 2130935 (S.D.N.Y. May 6, 2015)................48

*Murray v. Cuomo,*
  No. 1:20-cv-03571, 2020 WL 2521449 (S.D.N.Y. May 16, 2020).........28

*Murphy v. Benson,* 270 F.2d 419 (2d Cir. 1959) ........................................16

*Murtaugh v. New York,*
  810 F. Supp. 2d 446 (N.D.N.Y. 2011).................................................33

*N.Y. State Rest. Ass'n v. N.Y. City. Dep't of Health & Mental Hygiene,*
  303 F. Supp. 2d 265 (E.D.N.Y. 2004) .................................................33

*Natl. Elec. Mfrs. Assn v Sorrell,* 272 F3d 104 (2d Cir 2001) .......................28

*Nat'l Fuel Gas Distrib. Corp. v. NYSERDA,*
 265 F. Supp. 3d 286 (W.D.N.Y. 2017) ................................................................................ 36

*Nat'l Park Hospitality Ass'n v. Dep't of Interior,*
 538 U.S. 803 (2002) .............................................................................................................. 16

*Natale v. Town of Ridgefield,*
 170 F.3d 258 (2d Cir. 1999) ................................................................................................ 32

*National Fuel Gas Supply Corp. v. Town of Wales,*
 904 F. Supp. 2d 324 (W.D.N.Y. 2012) ............................................................................... 35

*New Hampshire v. Maine,*
 426 U.S. 363 (1976) .............................................................................................................. 46

*New York Civil Liberties Union v. Grandeau,*
 528 F.3d 122 (2d Cir. 2008) ........................................................................................... 16-17

*New York State Court Clerks v. Unified Ct. Syst.,*
 25 F.Supp.3d 459 (S.D.N.Y. 2014) ..................................................................................... 19

*Newman & Cahn, LLP v Sharp,*
 388 F.Supp.2d 115 (E.D.N.Y. 2005) ................................................................................... 48

*Nolan v. Cuomo,*
 No. 11-cv-5827, 2013 WL 168674 (E.D.N.Y. Jan. 16, 2013) ............................................. 19

*Northeastern Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.,*
 472 U.S. 159 (1985) .............................................................................................................. 46

*NRA of Am. v. Cuomo,*
 350 F.Supp.3d 94 (N.D.N.Y. 2018) ..................................................................................... 34

*Nunez v. Cuomo,*
 No. 11-cv-3457, 2012 WL 3241260 (E.D.N.Y. Aug. 11, 2012) .................................. 20, 29-30

*O'Shea v. Littleton,*
 414 U.S. 488 (1974) .............................................................................................................. 12

*Omnistone Corp. v. Cuomo,*
 No. 20-cv-2153, Dkt. 18 (E.D.N.Y. May 15, 2020) ......................................................... 28, 31

*Open Our Oregon v. Brown,* No. 6:20-cv-773, 2020 WL 2542861 (D. Or. May
 19, 2020) ............................................................................................................................... 22

*Oregon Waste Systems, Inc. v. Dep't of Environ. Quality of State of Oregon,*
 511 U.S. 93 (1984) ................................................................................................................ 26

vi

*Overstock.com, Inc. v. New York State Dep't of Taxation & Fin.,*
    20 N.Y.3d 586 (2013) ............................................................................................................23

*Padavan v. United States,*
    82 F.3d 23 (1996)..................................................................................................................44

*Panzella v. City of Newburgh,*
    231 F.Supp.3d 1 (S.D.N.Y. 2017) ........................................................................................38

*Parascando v. Monaheit,*
    123 N.Y.S.3d 198 (2d Dep't 2020).......................................................................................25

*Penn Central Transportation Co. v. New York City,*
    438 U.S. 104 (1978)..............................................................................................................36

*Pennhurst State School & Hosp. v. Halderman,*
    456 U.S. 89 (1984)..........................................................................................................17, 19

*People ex rel. Hamilton v. Brann,*
    No. 260188/2020, 2020 WL 1695541 (Sup. Ct. Apr. 2. 2020) ........................................ 20-21

*People of State of N.Y. v. O'Neil,*
    359 U.S. 1 (1959)............................................................................................................ 47-48

*People v. Epton,*
    19 N.Y.2d 496 (1967) ...........................................................................................................23

*People v. Hood,*
    67 Misc. 3d 1204(A) (City Ct. 2020).....................................................................................21

*People v. Knox,*
    12 N.Y.3d 60 (2009) .............................................................................................................24

*Pietrangelo v United States Army,*
    568 F.3d 341 (2d Cir. 2009)..................................................................................................48

*Pike v. Bruce Church, Inc.,*
    387 U.S. 137 (1970)..............................................................................................................28

*Progressive Credit Union v. City of New York,*
    889 F.3d 40 (2d Cir. 2018)...............................................................................................38, 39

*Pungitore v. Barbera,*
    506 Fed. App'x 40 (2d Cir. 2012).........................................................................................12

*Rini v. Zwin,*
    886 F. Supp. 270 (E.D.N.Y. 1995) .........................................................................................3

*Rivera v FBI,*
    No. 5:16-cv-00997, 2016 WL 6081435 (N.D.N.Y. Sept. 13, 2016)..........................................44

*Robles v. Dennison,*
    449 Fed. App'x 51 (2d Cir. 2011)................................................................................................32

*Rockwell Int'l Corp. v. United States,*
    549 U.S. 457 (2007).............................................................................................................11, 13

*S.S. Silberblatt, Inc. v. Phalen,*
    41 Misc. 2d 899 (Sup. Ct. Albany Cnty. 1964) .........................................................................26

*SEC v Price Waterhouse,*
    41 F.3d 805 (2d Cir. 1994)..........................................................................................................48

*Selevan v. New York Thruway Auth.,*
    584 F.3d 82 (2d Cir. 2009)..........................................................................................................26

*Shain v. Ellison,*
    356 F.3d 211 (2d Cir. 2004)................................................................................................. 12-13

*Sherman v. Town of Chester,*
    752 F.3d 554 (2d Cir. 2014)................................................................................................ 35-36

*Sherwin-Williams Co. v. Crotty,*
    334 F. Supp. 2d 187 (N.D.N.Y. 2004) .......................................................................................20

*Simmonds v. I.N.S,* 326 F.3d 351 (2d Cir. 2003) ...........................................................................17

*Six v. Newsom,*
    No. 8:20-cv-00877, 2020 WL 2896543 (C.D. Cal. May 22, 2020)...........................................40

*Slidewaters LLC V. Washington Dept' of Labor & Indus.,*
    No. 2:20-cv-0210, 2020 WL 3130295 (E.D. Wash. June 12, 2020) .................................. 21-22

*South Bay United Pentecostal Church v Newsom,*
    140 S. Ct. 1613 (2020)................................................................................................................22

*Spell v. Edwards,*
    962 F.3d 175 (5th Cir. 2020) ......................................................................................................15

*Spokeo, Inc. v Robins,*
    136 S. Ct. 1540 (2016)................................................................................................................11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302
    (2002) ...................................................................................................................................... 35-36

*Talleywhacker, Inc. v. Cooper,*
    No. 5:20-cv-218-FL, 2020 WL 3051207 (E.D.N.C. Jun. 8, 2020)......................................20, 40

*Top Tile Bldg. Supply Corp. v. New York State Tax Com.,*
    94 A.D.2d 885 (3d Dep't 1983) .............................................................................................25

*Town of Lysander v. Hafner,*
    96 N.Y.2d 558 (2001) ...........................................................................................................25

*Trump v. Hawaii,*
    138 S. Ct. 377 (2017) ...........................................................................................................16

*Trump v. IRAP,*
    138 S. Ct. 353 (2017) ...........................................................................................................16

*TZ Manor, LLC v. Estate of Daines,*
    750 Fed. App'x 26 (2018) (Summary Order) .......................................................................35

*U.S. Dep't of Treasury v. Galioto,*
    477 U.S. 556 (1986) .............................................................................................................14

*USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272 (2d Cir.1995) ........................................27

*United States DOJ v Hudson,*
    626 F.3d 36 (2d Cir. 2010) ..................................................................................................48

*United States Steel Corp. v. Multistate Tax Comm'n,*
    434 U.S. 452 (1978) ........................................................................................................ 46-47

*United States v. Bifield,* 702 F.2d 342 (2d Cir. 1983) .................................................................43

*United States v. Juvenile Male,*
    564 U.S. 932 (2011) .............................................................................................................14

*United States v. Lanier,*
    520 U.S. 259 (1997) .............................................................................................................32

*United States v. Rybicki,*
    354 F.3d 124 (2d Cir. 2003) ................................................................................................43

*Vandor, Inc. v. Militello,* 301 F.3d 37 (2d Cir. 2002) .................................................................35

*Varricchio v. Chalecki,*
    No. 3:14-cv-00937, 2016 WL 5422046 (D. Conn. Sept. 28, 2016), aff'd 701
    Fed. App'x 65 (2d Cir. 2017) ..............................................................................................44

*Village of Hoffman Estates v. Flipside, Hoffman Estates,*
    455 U.S. 489 (1982) ........................................................................................................ 40-41

*Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) ...............................................................38

*Virginia v. Tennessee,*
   148 U.S. 503 (1893)................................................................................................45

*Walker v. City of Waterbury,*
   361 Fed. App'x 163 (2d Cir. 2010)........................................................................32

*Wang v. Pataki,*
   164 F. Supp. 2d 406 (S.D.N.Y. 2001)....................................................................18

*Waronker v. Hempstead Union Free Sch. Dist.,*
   788 Fed. App'x 788 (2d Cir. 2019).........................................................................33

*Warren v. U.S.,*
   859 F.Supp.2d 522 (W.D.N.Y. 2012) .....................................................................44

*Western Oil and Gas Ass'n v. Sonoma Co.,*
   905 F.2d 1287 (9th Cir. 1990) ...............................................................................16

*Woodruff v. Rediehs,*
   No. 8:18-cv-522, 2018 WL 2175549 (N.D.N.Y. May 11, 2018) ...........................44

*Yang v. Kelner,*
   No. 20-cv-3325, 2020 WL 2129597 (S.D.N.Y. May 5, 2020) ...............................20

**CONSTITUTIONS**

First Amendment ...........................................................................................................43

Fifth Amendment.......................................................................................15, 32, 35, 37

Ninth Amendment..........................................................................................................44

Tenth Amendment ................................................................................................... 43-44

Eleventh Amendment............................................................................................ 17, 19-20

Fourteenth Amendment .....................................................................................17, 33, 3

Constitution of the State of New York .........................................................................23

North Carolina Constitution..........................................................................................20

United States Constitution .............................................................................................23

**FEDERAL STATUTES**

26 U.S.C § 7430.............................................................................................................48

28 U.S.C. § 1367(a) .......................................................................................................20

42 U.S.C. § 1988......................................................................................................47-48

Equal Access to Justice Act, 28 U.S.C.S.
    § 2412...............................................................................................................48

Freedom of Information Act, 5 U.S.C.
    § 552(a)(4)(E) ..................................................................................................48

Internal Revenue Code
    § 7430...............................................................................................................48

## STATE STATUTES

New York Executive Law
    § 29-a (1).........................................................................................................24

    § 29-a(4)........................................................................................................3, 21

N.Y. Exec. Law
    § 29-a ........................................................................................................ passim

Public Health Law
    § 12................................................................................................................3, 18

## FEDERAL REGULATIONS

85 Fed. Reg. 15, 337 (Mar. 13, 2020) No. 9994 ............................................................2

## STATE REGULATIONS

EO 202 .............................................................................................................................3

EO 202.6 ............................................................................................................ 3-4, 10, 40

EO 202.7 ..........................................................................................................................7

EO 202.8 ................................................................................................................. passim

EO 202.35 ............................................................................................................... passim

*Statement on the Second Meeting of the International Health Regulations (2005)*
    *Emergency Committee Regarding the Outbreak of Novel Coronavirus (2019-*
    *nCoV)* (Jan 30, 2020), https://www.who.int/docs/default-
    source/coronaviruse/situation-reports/20200131-sitrep-11-
    ncov.pdf?sfvrsn=de7c0f7_4........................................................................................2

## RULES

Fed. R. Evid.  201(b)(2)....................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...................................................................6, 10

Federal Rule of Civil Procedure 12(b)(1) ................................................................ 10-11

**MISCELLANEOUS AUTHORITIES**

available at https://www.governor.ny.gov/executiveorders............................................................4

*Coronavirus*, https://www.who.int/health-topics/coronavirus#tab=tab_1; ......................................2

"Force Reduction and Safety Protocols" (the "Protocol")................................................................6

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-
    spreads.html ...............................................................................................................................2

https://www.governor.ny.gov/news/no-20235-continuing-temporary-suspension-
    and-modification-laws-relating-disaster-emergency ..................................................................4

https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/NYForward
    ReopeningGuide.pdf (last visited July 16, 2020).......................................................................4

https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/OfficesSum
    maryGuidelines.pdf (last visited July 16, 2020) ......................................................................10

https://www.who.int/docs/default-source/coronaviruse/situation-
    reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57.....................................................2

Andrew M. Cuomo, the Governor of the State of New York ("Governor Cuomo") and Letitia James, Attorney General of the State of New York, ("AG James") (together, the "Defendants"), hereby move to dismiss Plaintiff's Amended Complaint with prejudice and costs.

## PRELIMINARY STATEMENT

This case stands against the backdrop of the global COVID-19 pandemic that ravaged the world at whirlwind speed. Despite this overwhelming tragedy—something even Plaintiff admits was a "crisis" that warranted "maximum protection to Plaintiff's employees in the event the state and federal issued protocols were deemed inadequate to provide proper protection to Plaintiff's employees" Dkt. 8, ¶¶ 31, 159, 182, 208, 209—New York has begun to recover, with infection, hospitalization and death rates dropping precipitously. Guided by scientific data, New York has moved from New York Pause into NY Forward, with easing of restrictions on businesses. Businesses in Western New York, where Plaintiff has its offices, entered into Phase Two of NY Forward in late May and early June, and as of June 30, 2020, are in Phase Four.

Nevertheless, Plaintiff—who voluntarily reduced its staff, advertised it remained "open to service all of [its] clients' needs," and made clear it would operate with all needed personnel "no more, and no fewer"—claims that Defendants "seized the COVID-19 pandemic to expand their authority" without a proper legal or factual basis. Though Plaintiff received permission to continue "essential" legal tasks, it still argues Governor Cuomo's issuance of "Executive Orders" ("EOs"), and AG James attempt to investigate violations of them, interfered with a plethora of its Federal and State Constitutional rights.

Plaintiff's claims are baseless. A chorus of courts across the country recognized that some individual rights must give way to a deeper need to control the spread of infectious disease and protect the lives of its citizens. Chief Justice Roberts reiterated recently that state officials' latitude is especially broad when they act in areas fraught with medical and scientific

uncertainties. HoganWillig was not somehow exempt from these bedrock principles and had no sound basis to challenge the Defendants' actions when this suit was commenced. With the EOs about which it complains no longer applicable, it certainly has no basis now.

## STATEMENT OF FACTS

### A. The COVID-19 public health emergency and Defendants' response.

COVID-19 is a highly infectious and potentially deadly respiratory disease that spreads easily from person-to-person.[1] On January 31, 2020, the WHO declared a "public health emergency of international concern,"[2] and on March 11, 2020, characterized the outbreak as a pandemic.[3] On March 13, 2020, President Trump declared a national emergency.[4] By March 19, 2020, almost every state in the country declared a state of emergency.[5]

On March 3, 2020, the State Legislature amended N.Y. Exec. Law § 29-a, delineating additional bases for the Governor to issue executive orders, including imminent, impending or

---

[1]     World Health Organization ("WHO"), *Coronavirus*, https://www.who.int/health-topics/coronavirus#tab=tab_1; Centers for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html). The Court may take judicial notice of reported health statistics, *Giraldo v. Kessler*, 694 F.3d 161, 163 (2d Cir. 2012), as well as government websites and publications by the CDC and/or WHO, consistent with Fed. R. Evid. 201(b)(2).

[2]     WHO, *Statement on the Second Meeting of the International Health Regulations (2005) Emergency Committee Regarding the Outbreak of Novel Coronavirus (2019-nCoV)* (Jan 30, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200131-sitrep-11-ncov.pdf?sfvrsn=de7c0f7_4

[3]     https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57.

[4]     *See* Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

[5]     *See* General Order for the United States District Court for the Western District of New York at 1 (May 13, 2020). That Order, issued on the same day Plaintiff filed its initial Complaint, noted that all non-essential businesses were closed and the Court implemented prudent measures to reduce person-to-person contact, including requiring attorneys and other personnel to participate remotely, by video or telephone.

urgent threat of widespread disaster and threats from an epidemic or disease outbreak. L. 2020, ch. 23, § 2, eff. March 3, 2020. Section 29-a does not require the Governor to obtain legislative approval prior to declaring an emergency. Section §29-a(4) makes clear that "[t]he legislature may terminate by concurrent resolution executive orders issued under this section at any time."

On March 7, 2020, Governor Cuomo issued EO 202, declaring a State Disaster Emergency in New York. Dkt. 8, ¶ 21.[6] On March 20, 2020, Governor Cuomo issued EO 202.6, which required all businesses to utilize, to the maximum extent possible, telecommuting or work-from-home procedures ("WFH") and reduce in-person workforce by 50% no later than March 20, 2020 at 8 p.m. Dkt. 8, ¶ 22. The Governor then issued EO 202.8, which required non-essential businesses to reduce their in-person workforce by 100% by March 22, 2020. *Id.* ¶ 23. Businesses that violated the EO were subject to various methods of enforcement, including as if it constituted a violation of an order pursuant to Public Health Law § 12, which vests the Attorney General with authority to enforce such a violation, at the request of the Commissioner of Health. The EOs were temporary and required the Governor to renew them after 30 days. Dkt. 8, ¶ 230.

Businesses deemed "essential" were not subject to the in-person restrictions, Dkt. 8, ¶¶ 22-24, and those not specifically deemed essential could request an opinion from New York State Department of Economic Development d/b/a Empire State Development ("ESD"), as to whether certain of its business activities were essential. *Id.* ¶ 22. Plaintiff sought and received an

---

[6] Courts routinely take judicial notice of governors'COVID-19 executive orders. *See, e.g., Amato v. Elicker,* No. 3:20-cv-464, 2020 WL 2542788, at *1 (D. Conn. May 19, 2020); *McGhee v. City of Flagstaff,* No. 20-cv-08081, 2020 WL 2309881, at *4-5 (D. Ariz. May 8, 2020); *Cross Culture Christian Ctr. v. Newsom,* No. 2:20-cv-00832, 2020 WL 2121111, at *2 (E.D. Cal. May 5, 2020).

3

exemption for "essential" legal work. Dkt. 8, ¶ 9. ESD specifically advised Plaintiff only "*[t]hat*

business function" was considered essential and "not subject to the required 100% workforce

reduction" under revised EO 202.6. *Id.* ¶ 27 (emphasis added). "Any other business activities

being completed at [its] location that were not essential [were] still subject to [revised EO]

202.6." *Id.*

On April 9, 2020, ESD amended its guidance with respect to all legal work, stating that

in-person work presence shall be limited to work only in support of essential businesses, *id.* ¶ 25,

and "any previous designation or determination by ESD that a firm is an essential business that is

inconsistent with the revised guidelines is no longer valid," a fact to which Plaintiff was

specifically alerted on April 10, 2020. Dkt. 8-5, at 47.

Since the State's pandemic response began in earnest, Governor Cuomo has issued over

40 EOs. Dkt. 8, ¶ 227.[7] This includes EO 202.35, which loosened restrictions on businesses,

starting May 29, 2020, based on scientific data showing a sufficiently low infection rate, capacity

of the health care system to absorb a potential resurgence of new cases, and increased diagnostic

testing and contact-tracing capacity.[8] EO 202.35 stated that, "effective at 1:00 p.m. on May 29,

2020," "the reductions and restrictions on the in-person workforce at non-essential businesses or

other entities shall no longer apply to Phase Two industries.[9] As of June 2, 2020, legal and real

estate businesses in Western New York entered Phase Two. Zimmermann Decl. ¶ 23. As of June

---

[7]       The EOs are identified and provided in the Declaration of George Michael Zimmermann,
submitted herewith and are also available at https://www.governor.ny.gov/executiveorders.

[8]

        https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/NYForwardReopeni
ngGuide.pdf at 46 (last visited July 16, 2020).

[9]       https://www.governor.ny.gov/news/no-20235-continuing-temporary-suspension-and-
modification-laws-relating-disaster-emergency.

16, 2020, Western New York entered Phase Three, with additional business activities opened. *Id.*
¶ 26. Western New York is now in Phase Four. *Id.* ¶ 28.

## B. **Plaintiff's Allegations**

Plaintiff alleges ESD deemed it an "essential business," Dkt. 8, ¶ 9, claiming this meant
"it [was] in the best interest of the [S]tate to have [Plaintiff's] workforce continue at full capacity
in order to properly respond to the [COVID-19 pandemic]." *Id.* ¶ 28. Plaintiff "remained in
operation throughout the duration of the COVID-19 pandemic," *id.* ¶ 29, "voluntarily par[ing]
down to" to essential personnel "as a general safety matter," including allowing or instructing
"people to work from home to ease their personal concerns about catching the virus." Dkt. 8-3 at
5 (emphasis added). Plaintiff implemented its own safety protocols and conferred "with its own
medical and scientific advisers to implement the best safety protocol possible." Dkt. 8, ¶¶ 30-32.

Like the panoply of other businesses, schools, and other services impacted by COVID-
19, *id.* ¶ 216, Plaintiff claims it and other law firms were expected to service clients remotely,
and, coupled with the cessation of most economic activity, Plaintiff's output and productivity
was "less than fifty percent of what it was prior to the issuance of the EOs." *Id.* ¶ 216(i). Plaintiff
"does not criticize Defendant Cuomo for taking steps and measures based on the data available"
at the time the EOs were issued and "recognizes the need for cautious planning and austere
measures and exercise of emergency powers that infringe on the rights of the people when the
data supports it," *id.* ¶ 94, but it complains the anticipated need for hospital beds and ventilators
"turned out to be drastically different, and less significant, than predicted at the outset," *id.* ¶ 95,
"particularly" because "each day" new therapies became available. *Id.* ¶ 98.

Plaintiff claims that staff from the New York Office of the Attorney General ("OAG")
prohibited "what the [EO's], as interpreted by the [ESD], are intended to allow, that is, for
essential businesses to operate to keep certain functionality viable that is deemed necessary for

5

society's best interests." *Id.* ¶ 60. Plaintiff's allegations and annexed exhibits[10] show that, on

April 6, 2020, Assistant Attorney General ("AAG") Dawn Foshee, contacted Plaintiff to discuss

its compliance with the EOs, Dkt. 8, ¶¶ 43, 45, and advised Plaintiff that irrespective of any

"essential" designation by ESD, the EOs required as many employees as possible to WFH, and

that only business operations necessary to support "essential" services were exempt from the

restrictions. Dkt. 8-5, at 20. She requested information about Plaintiff's specific activities

deemed essential by ESD, the number of employees working at its offices, their functions, why

working remotely was not possible, and safety precautions taken to protect employees and

clients. *Id.* at 20-21. Two days later AAG Deanna Nelson contacted Plaintiff requesting

information about its status as an "essential business" and its ongoing operations. Dkt. 8, ¶ 46.

Plaintiff describes its interactions with AAG Nelson as "constructive," but claims AAG Foshee

put it in an "impossible position." *Id.* ¶¶ 48, 60.

On April 10, 2020, Plaintiff provided the OAG with its "Force Reduction and Safety

Protocols" (the "Protocol"), *id.* at 23, 26, which represented that the maximum number of people

it designated as "essential" employees in its Amherst/Getzville office was 36 and, often times, 31

or fewer on a daily basis, *id.* at 3, 27, and said its main office had 28,000 square feet of space and

a capacity of up to 335 people, less than its current "roster." *Id.* at 27.

Consistent with the amended ESD guidance, the OAG advised that "any previous

designation or determination by ESD that a firm is an essential business that is inconsistent with

the revised guidelines is no longer valid." Dkt. 8-5 at 47. It also advised that Item #14 of the

---

[10]     In deciding a 12(b)(6) motion, the Court may examine any written instrument attached to
the complaint, any statements or documents incorporated in it by reference, and any document on
which the complaint relies heavily. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.
2002).

Revised Guidelines permitted legal work with "extensive restrictions," but in-person work was limited to work only in support of essential business, and such work should be conducted as remotely as possible. *Id.* For real estate closings in Plaintiff's offices, the OAG advised those services could be conducted in-person only to the extent necessary, EO 202.7 permitted remote witnessing, and notaries were empowered to perform remote authorizations. *Id.* The OAG requested information on real estate matters requiring in-person performance. *Id.* In response to Plaintiff's statement that folks who "feel comfortable" working from home could do so, the OAG advised that this did not comply with the EO. *Id.* at 48. The OAG also asked Plaintiff to identify each person on site, his/her function, and the work needed to be performed onsite, rather than remotely. *Id.* Plaintiff responded on April 13, 2020 that its Amherst and Lancaster offices continued to operate with in-person staff daily and that it was still conducting in-person real estate transactions, claiming item #14 of the ESD's guidance allowed it to do so. Dkt. 8-5, at 44-45.

On April 20, 2020, the OAG advised Plaintiff that "[p]ursuant to item #14 of the ESD guidance, real estate services shall be conducted remotely for all transactions," and that "[s]ervices and parts therein may be conducted in-person only to the extent legally necessary and in accordance with appropriate social distancing and cleaning/disinfecting protocols." Dkt. 8-2 at 2. If Plaintiff was unable to conduct real estate closings remotely due to any factor other than compliance with a specific law, the OAG instructed Plaintiff to cease and desist from performing these transactions. *Id.* The OAG noted it had received multiple complaints that attorneys and support staff had been required to report to work regardless of the task or whether it could be done remotely. *Id.* It further advised that *encouraging* employees to work remotely fell short of the EO's mandate, which required WFH "to the maximum extent possible." *Id.* The

7

OAG directed Plaintiff to take immediate steps to reduce the number of employees reporting to its Amherst office and transition to working remotely on a regular basis. *Id.*

On April 22, 2020, Plaintiff responded that it was an "essential business," and thus was "not subject to mandatory workforce reduction," nor "bound by compulsory workforce reduction," and had "voluntarily pared down to essential personnel as a general safety matter, allowed/instructed people to work from home to ease their personal concerns about catching the virus," and cut in-office staff to a minimum to carry out essential business. Dkt. 8-3 at 5, 6. Plaintiff admitted no law required in-person real estate closings, questioned whether virtual notarial executions had expired, said "lenders, title insurance companies, etc. wouldn't and won't honor or 'insure over' virtual notarizations," and advised that, if services could not be provided remotely, it would give its clients the ability of coming into its offices. *Id.* at 2-3. Plaintiff also said daily attendance fluctuated and it was "impossible" to know who was in the office on any given day, but it would see if keeping a log was feasible. *Id.* at 4.[11]

On April 27, 2020, the OAG reiterated that all business, including essential businesses, were required to utilize telecommuting to the maximum extent possible. Dkt. 8-5 at 16-18. It understood only 8-12 of Plaintiff's employees were WFH on a daily basis, *id.* at 16, and noted its concern with Plaintiff's website, which said:

WE REMAIN OPEN FOR BUSINESS.

HoganWillig has been designated as an 'Essential Business' pursuant to NYS Executive Order 202.6 and is currently staffed with all needed personnel on location to support its business services. We will continue to practice good and appropriate health behaviors while our office is open to service all of our clients' needs.

---

[11] Plaintiff wanted the OAG to disclose the identity of employees who wanted to WFH, said the information would be kept confidential and used only to determine if such employee could WFH, or, alternatively, would furlough such employees with a guarantee of re-employment once the "crisis" ended. *Id.*

Dkt. 8-4 at 2; Dkt. 8-5 at 17. The OAG advised Plaintiff that its office should not be open for business as usual, said Plaintiff could only be open to support "essential" business, and then only to the extent employees were unable to WFH. *Id.* It again advised Plaintiff that remote notarization was extended under the EO and directed Plaintiff to comply with the EOs. The OAG encouraged Plaintiff to continue to reduce in-person real estate closings and required its Lancaster staff to telework unless in-person real estate matters were legally necessary. *Id.* at. 2.

On April 28, 2020, Plaintiff said it was compliant and cooperative, would have 42 closings that week in which in-person contact was necessary, lenders and title underwriters would not accept e-notarization, and that it was open for business with all needed personnel "no more, and no fewer." Dkt. 8-5 at 13-14.

Plaintiff and AAG Foshee continued communicating throughout April and early May. *Id.* ¶¶ 49-56; Dkt. 8-1 through Dkt. 8-5. Plaintiff claims AAG Foshee insisted on additional actions, including electronic monitoring of its employees. Dkt. 8, ¶¶ 45, 58. But Plaintiff's exhibits show that AAG Foshee specifically advised this was unnecessary. Dkt. 8-1 at 2, 6. Plaintiff also claims it was prepared to take additional, unnamed, steps to comply with the EOs, but that Defendants rejected "all proposed measures," *id.* ¶ 57, that AAG Foshee engaged in "circumlocution," *id.* ¶¶ 54-55, and made its attempts to comply a "guessing game." *Id.* ¶ 63. Despite these allegations, Plaintiff emailed the OAG on May 6, 2020, stating the "list you gave me today gives me a more precise sense of exactly what you need from us. I am relieved to receive that, and am now confident we will be able to come up with a revised action and reporting plan that allows us to continue to perform essential business...." Dkt. 8-1 at 23. Plaintiff also stated, "[n]ow that I know with greater detail what you need, we can and will give you a more focused plan." *Id.* at 24.

## C. **New York Forward**

Though Plaintiff filed the operative Complaint on June 8, 2020,[12] it insists that, since the issuance of EO 202.6 on March 18, 2020, Governor Cuomo "has not revised the restrictions placed on businesses in the State of New York, despite the changing understanding of the nature of the COVID-19 pandemic in the intervening weeks." Dkt. 8, ¶¶ 189, 229. This ignores, at a minimum, Plaintiff's own admission that the Governor issued forty EOs, *id.*, ¶ 227, which would encompass EO 202.35.

EO 202.35 makes clear that the reductions and restrictions on in-person workforce in EO 202.8 no longer apply to Phase Two industries, which include legal and real estate businesses like Plaintiff's. Consistent with EO 202.35, businesses such as law firms and real estate services, are now required to limit occupancy to 50% of the maximum stated in its certificate of occupancy, while maintaining social distancing.[13]

## STANDARD OF REVIEW

A claim should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate it. Fed. R. Civ. P. 12(b)(1); *Aliev v. U.S.P.S.,* No. 19-cv-1156, 2020 WL 1956301, at *1 (W.D.N.Y. Apr. 23, 2020) (citing *Makarova v. United States* 201 F.3d 110, 113 (2d Cir. 2020)). A plaintiff asserting subject matter jurisdiction has the burden of proving jurisdiction by a preponderance of the evidence. *Id.* To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must

---

[12]    The original complaint was filed on May 13, 2020, one week after Plaintiff's May 6th email to the OAG promising it would adopt revised measures to comply with the EOs. Dkt. 1.

[13]https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/OfficesSummaryGuidelines.pdf (last visited July 16, 2020).

allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Id.* at *2. The operative standard requires Plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level. *Id.* Where, as here, dismissal is sought on both grounds, the Court should consider the Rule 12(b)(1) challenge first because the Court must have jurisdiction before it can properly determine the merits of a claim. *Id.* (collecting cases).

## ARGUMENT

## I. THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS

### A. Plaintiff Lacks Standing.

As the proponent of federal jurisdiction, Plaintiff must establish standing for each claim it asserts and each form of relief it seeks. *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006). The "irreducible constitutional minimum" of standing consists of three elements—a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v Robins*, 136 S. Ct. 1540, 1547 (2016) (collecting cases). To establish injury-in-fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The standing inquiry focuses on the requisite stake in the outcome when the complaint was filed. *Davis v. Federal Election Comm'n.* 554 U.S. 724, 734 (2008). Where, as here, a plaintiff files a complaint and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction. *Rockwell Int'l Corp.*

*v. United States,* 549 U.S. 457, 473-74 (2007).

Plaintiff seeks prospective relief against state officials in their official capacity. But even assuming sovereign immunity does not bar such claims—and Defendants show below that it does—Plaintiff must prove the likelihood of future or continuing harm to obtain prospective injunctive relief. *Pungitore v. Barbera,* 506 Fed. App'x 40, 41 (2d Cir. 2012). Past injury is insufficient; Plaintiff must show a real and immediate threat of repeated injury. *Azim v. Vance*, 530 Fed. App'x 44, 45 (2d Cir. 2013) (Summary Order); *O'Shea v. Littleton*, 414 U.S. 488, 493-96 (1974) (Past exposure to illegal conduct unaccompanied by any continuing, present adverse effects does not show a present controversy sufficient to have standing to seek injunctive relief). If there is no continuing burden on a plaintiff's practices, it lacks standing to seek injunctive or declaratory relief. *Degale v. McDonough*, No. 16-cv-9905, 2018 WL 2943224, at *3 (S.D.N.Y. Jun. 12, 2018). "[A]bstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Shain v. Ellison,* 356 F.3d 211, 215 (2d Cir. 2004).

Here, Plaintiff filed its amended complaint on June 8, 2020. By that time, the EOs about which Plaintiff complains were no longer applicable to Plaintiff. Instead, EO 202.35 was in place and provides that the reductions on in-person workforce in EO 202.8 no longer apply to Phase Two industries. Phase Two industries included legal and real estate services.[14] Notably, in *Dark Storm Industries v. Cuomo,* No. 1:20-cv-0360, 2020 WL 3833107, at *6 (N.D.N.Y. July 8, 2020), the court rejected Defendant's standing argument because the former EOs were in place when suit was filed. In contrast here, the EOs about which Plaintiff complains no longer applied to Plaintiff when Plaintiff filed the Amended Complaint and the Supreme Court has made clear

---

[14]      *See* n.9, *supra.*

that the Court must look to the amended complaint in determining whether Plaintiff had standing when the amended complaint was filed. *Rockwell Int'l Corp.* 549 U.S. at 473.

Any argument that Plaintiff could be injured *if* the Governor imposed new restrictions *if* COVID-19 infections rates increased exponentially in Western New York and that Plaintiff might be injured *if* such EOs applied to it is an accumulation of inferences that is too speculative to supply a predicate for prospective injunctive relief and does not show a real and immediate threat of injury. *Shain v. Ellison,* 356 F.3d at 215; *see also Liberian Cmty. Assn. of Connecticut v. Malloy,* No. 3:16-cv-00201, 2017 WL 4897048, at *4 (D. Conn. Mar. 30, 2017) (plaintiffs lacked standing to seek prospective injunctive relief where it alleged risk of future Ebola outbreak in response to which defendants would impose quarantine policies that were previously applied to plaintiffs).

Even before EO 202.35 was implemented, Plaintiff's actions show that it did not suffer an injury-in-fact fairly traceable to Defendants' actions. Plaintiff "voluntarily pared down to essential personnel as a general safety matter, allowed/instructed people to work from home to ease their personal concerns about catching the virus," and cut in-office staff to a minimum to carry out essential business. Dkt. 8-3 at 5, 6. Where, as here, a plaintiff acts voluntarily, it lacks standing because it cannot show injury-in-fact fairly traceable from the challenged action. *See, e.g., Amato,* 2020 WL 2542788, at *6 (Plaintiffs lacked standing where they voluntarily closed restaurant in response to COVID-19).[15]

---

[15]     Although Plaintiff delineates restrictions placed on others, Dkt. 8, ¶ 216, it cannot show that it suffered a particular injury because other entities in which it had no stake faced restrictions on its business, community or institutional operations. *Lujan,* 504 U.S. at 573-74 (a plaintiff claiming harm to his and every citizen's interest and seeking relief that no more tangibly benefits him than it does the public at large does not state an Article III case or controversy).

Moreover, Plaintiff operated with all needed personnel "no more, and no fewer," Dkt. 8-5 at 13-14, insisted it was not subject to mandatory workforce reduction, nor bound by compulsory workforce reduction, continued with client meetings and real estate closings, and advertised on its website that it remained open to service *all* of its clients' needs. While the OAG issued an April 20, 2020 cease-and-desist letter, which Plaintiff essentially ignored, no enforcement action was taken. Thus, even before the at-issue EOs were lifted, Plaintiff could not show a concrete injury due to Defendants' actions. It surely cannot do so now and, as such, the Court should find that it lacks jurisdiction to entertain Plaintiff's claims.

**B.** Plaintiff's Claims are Moot.

Article III's case-or-controversy requires that the case remain "alive at all stages of judicial proceedings," because "[i]f events subsequent to the filing of a lawsuit resolve the controversy, the case should be dismissed as moot." *Delaware Riverkeeper Network v. New York State Dep't of Envt'l. Conserv.,* 788 Fed. App'x 65, 66 (2d Cir. 2019) (Summary Order). "Throughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *United States v. Juvenile Male,* 564 U.S. 932, 936 (2011). If the court's decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future, the case is moot. *Delaware Riverkeeper,* 788 Fed. App'x at 66.

Events subsequent to the filing of a lawsuit that resolve the controversy require that a case be dismissed as moot. *Id.* Because a court must look to the law as it now stands, not as it once did, *Hall v. Beals,* 396 U.S. 45, 48, 50 (1969), an intervening change in law, which entitles a plaintiff to everything he sought previously, renders a case moot. *See, e.g., U.S. Dep't of Treasury v. Galioto,* 477 U.S. 556, 559 (1986) (holding claim moot in light of new legislation).

14

Plaintiff complains baselessly that, despite the changing understanding of the nature of the COVID-19 pandemic, Defendant Cuomo did not revise the restrictions placed on businesses as circumstances evolved. Dkt. 8, ¶ 173. But Plaintiff admits that the Governor issued over 40 EO's, and the Court can take judicial notice of them. So, Plaintiff's assertion is obviously false and was so at the time of its June 8, 2020 operative Complaint. Law firms in Western New York have already been allowed to open. EO 202.35 clearly states the reductions and restrictions on in-person workforce in EO 202.8 "shall no longer apply to Phase Two industries effective May 29, 2020."

While EO 202.35 limits an office's capacity to 50%, the amended complaint shows Plaintiff's office capacity easily accommodates Plaintiff's total workforce. By Plaintiff's account, it only has 72 employees, but can accommodate nearly three times that number in one office alone. According to Plaintiff, its Amherst office can accommodate 335 employees (Dkt. 8-3 at 16; Dkt. 8-4 at 3), including 103 people in offices and cubicles and 225 people in its conference and break rooms. Dkt. 8-1 at 2, 62. Plaintiff also has 5,000 additional square feet of office space in its Lancaster office, 10,000 additional square feet in its Buffalo office, 3,500 square feet in its Lockport office, and 1,500 square feet in its Ellicottville office. *Id.* at 36, 39, 61; Dkt. 8-3 at 16, 17. As such, the 50% limitation does not affect Plaintiff at all.

Several courts have found that subsequently-eased EOs rendered cases challenging stay-at-home orders moot.[16] This accords with recent Supreme Court decisions which found that

---

[16] *See Spell v. Edwards,* 962 F.3d 175, 179 (5th Cir. 2020) ("Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do."); *Amato,* 2020 WL 2542788, at *5 (challenge to governor's orders restricting gathering size was moot since the orders were superseded); *Cameron v. Beshear,* No. 3:20-cv-00023, 2020 WL 2573463, at *2 (E.D. Ky. May 21, 2020) (because travel orders no longer existed, challenge was moot); *Cross Culture Christian Center v. Newsom,* No. 2:20-cv-00832, 2020 WL 212111, at *3, n.2 (E.D. Cal. May 5, 2020) (challenge to EOs that required congregants to refrain from direct or

15

challenges to expired executive orders were moot. *Trump v. Hawaii,* 138 S. Ct. 377, 377 (2017) (challenge to expired EOs were moot); *Trump v. IRAP,* 138 S. Ct. 353, 353 (2017) (same). While recent decisions on this point have not been uniform and other courts have found that the voluntary cessation doctrine is not satisfied if there is a chance that businesses might be forced to shut down again, this Court should decline to follow their reasoning. As of the date of this filing, EO 202.35 has been applicable to Plaintiff longer than EO 202.8. By statute, the EOs expired after 30 days unless renewed. Where "the challenged act is short-term in nature and discontinued after having achieved its desired objective, the voluntary cessation standard is not applicable." *Flynt v. Weinberger,* 762 F.2d 134, 135 n.1 (D.C. Cir. 1985) (citing *Murphy v. Benson,* 270 F.2d 419, 421 (2d Cir. 1959)). Nor does the doctrine preserve an otherwise moot case where the action was not taken for the deliberate purpose of evading a possible adverse verdict by this Court. *E.I. Dupont De Nemours Co. v. Invista,* 473 F.3d 44, 47 (2d Cir. 2006).

### C. Plaintiff's Claims are Not Ripe.

The ripeness inquiry asks, "whether there yet is any need for the court to act," while the mootness inquiry asks, "whether there is anything left for the court to do." *Western Oil and Gas Ass'n v. Sonoma Co.,* 905 F.2d 1287, 1290 (9th Cir. 1990) (citing Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3532.1 (2d ed. 1984)). To determine whether a case is ripe, a court must evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 807-808 (2002). "[T]he 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *New York Civil Liberties*

---

indirect contact moot in light of subsequent EO); *Cassell v. Snyders,* No. 20-cv-50153, 2020 WL 2112374, at *4 (D. Ill. May 3, 2020) (plaintiffs' claims for declaratory and injunctive relief moot due to new EOs).

16

*Union v. Grandeau,* 528 F.3d 122, 132 (2d Cir. 2008) (quoting *Simmonds v. I.N.S,* 326 F.3d 351, 359 (2d Cir. 2003)). "In assessing this possibility of hardship, courts ask whether the challenged action creates a direct and immediate dilemma for the parties. Mere possibility of future injury does not cause a direct and immediate dilemma sufficient to constitute hardship." *Id.* at 134.

Plaintiff cannot satisfy either criteria. The OAG's investigation into Plaintiff's activities never ripened into the commencement of an enforcement proceeding. Businesses in Western New York entered Phase Two and are no longer subject to the threat of enforcement of EO 202.8. To the extent Plaintiff speculates it may be subjected to some different EO later in time, such claims are contingent on future events that may never occur and Plaintiff is not faced with a direct and immediate hardship. Thus, if not dismissed on standing or mootness grounds, the Court should dismiss Plaintiff's claims because they are not ripe.

### D. **Sovereign Immunity Bars Plaintiff's Claims.**

Plaintiff sued Defendants in their official capacities. Dkt. 8, ¶¶ 10, 11. Plaintiff seeks compensatory damages for an unjust taking without compensation on its Fifth and Fourteenth Amendment claim, *id.* at 59 (Addendum § g), and injunctive relief on its other claims. "[R]egardless of the nature of the relief sought," suits in federal court which name states as defendants are proscribed by the Eleventh Amendment, unless Congress has abrogated that state's Eleventh Amendment immunity, or the state has waived such immunity by unambiguously consenting to the suit. *Pennhurst State School & Hosp. v. Halderman,* 456 U.S. 89, 100 (1984). This immunity unquestionably extends to suits again state officials like the Governor and Attorney General in their official capacities. *See Mercer v. Cuomo,* No. 1:11–cv–0232, 2011 WL 3876310, at *8 (N.D.N.Y. Aug. 31, 2011).

While a suit against a state officer in her official capacity seeking prospective injunctive relief to prevent a continuing violation of federal law may, in limited circumstances, be

17

authorized under the *Ex Parte Young* exception, the official must have "both a particular duty to

enforce the statute in question and a demonstrated willingness to exercise that duty." *Citizens*

*Union of the State of New York v. Attorney General of the State of New York,* No. 16-cv-9592,

2017 WL 2984167, at \*4 (S.D.N.Y. June 23, 2017) (collecting cases). As the Court in *Ex Parte*

*Young* found, "it is plain that such officer must have some connection with the *enforcement* of

the act, or else it is merely making him a party as a representative of the state, and thereby

attempting to make the state a party." 209 U.S. 123, 157 (1908) (emphasis added). Numerous

courts have reaffirmed this principle,[17] including courts addressing challenges to COVID-19

related EOs.[18]

    Plaintiff has consistently alleged that AG James—not Governor Cuomo—enforced the

applicable EOs. Dkt. 8, ¶¶ 37, 40, 59, 62, 72, 73, 79, 80, 85, 137, 138. 164, 170, 188. Plaintiff

further recognized that Public Health Law § 12 vested AG James with authority to enforce EO

202.8. Dkt. 8, ¶ 170. Thus, the *Ex Parte Young* exception is inapplicable to Governor Cuomo,

and sovereign immunity bars Plaintiff's claims for injunctive relief as against him.

    Recognizing numerous courts ruled that sovereign immunity barred challenges to

COVID-19 orders to officials without enforcement authority, Plaintiff amended its complaint to

---

[17]    *Kelly v. New York State Civil Serv. Comm'n.,* 632 Fed. App'x 17, 18 (2d Cir. 2016)
(Summary Order) ("*Young* does not apply here. The state officer against whom prospective relief
is sought 'must have some connection with the enforcement of the act' that violates federal
law."); *Wang v. Pataki,* 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) ("[W]here the legislative
enactment provides that entities other than the executive branch of the state are responsible for
implementation of the statute no claim against the Governor lies.").

[18]    *In re Abbott,* 956 F.3d 696, 709 (5th Cir. 2020) (sovereign immunity barred claims
against Texas Governor and AG because power to promulgate EO is not the power to enforce it);
*Lighthouse Fellowship Church v. Northam,* No. 2:20-cv-204, 2020 WL 2614626, at \*3-5 (E.D.
Va. May 21, 2020) (sovereign immunity barred claims against governor because he lacked
enforcement authority for COVID-19 orders he issued).

raise a violation of the "Take Care" clause of the New York State Constitution. Dkt. 8, ¶ 214. But raising a "Take-Care" challenge is not enough to make that official a proper party in a suit challenging a state statute. *Citizens Union of the City of New York,* 2017 WL 2984167, at \*4 (collecting cases); *Nolan v. Cuomo,* No. 11-cv-5827, 2013 WL 168674, at \*10 (E.D.N.Y. Jan. 16, 2013) (argument that "Take Care" clause sufficient to show connection with enforcement of statute "has been soundly rejected by subsequent courts.").

While AG James had a duty to apply the EOs that were in effect previously, if asked by the Commissioner of Health, Plaintiff cannot show any continuing duty or willingness to enforce EO 202.8 against Plaintiff. Instead, EO 202.35 specifically provides that "the reductions and restrictions on the in-person workforce at non-essential businesses or other entities shall no longer apply to Phase Two industries." This includes professional services, such as legal work and real estate services. *See* n.9, *supra.* Because AG James no longer has any duty and has not sought to enforce such restrictions on Phase Two industries like Plaintiff, nor does Plaintiff allege otherwise, *Ex Parte Young's* limited exception, which must be tailored as precisely as possible to vindicate federal rights, *Citizens Union,* 2017 WL 2984167, at \*4, does not apply, and AG James is also entitled to sovereign immunity.[19]

The Eleventh Amendment similarly bars Plaintiff's claims seeking relief, whether prospective or retroactive, against state officials for their alleged violations of state law. *Pennhurst,* 465 U.S. at 117. As the Supreme Court said, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to

---

[19]     Plaintiff's claim for declaratory relief similarly fails because the Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law. *New York State Court Clerks v. Unified Ct. Syst.,* 25 F.Supp.3d 459, 468 (S.D.N.Y. 2014).

conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* Supplemental jurisdiction under 28 U.S.C. § 1367(a) does not constitute a congressional abrogation of the Eleventh Amendment." *Nunez v. Cuomo*, No. 11-cv-3457, 2012 WL 3241260, at *20 (E.D.N.Y. Aug. 11, 2012). Courts in this District and across the country have found that challenges to state-law stay-at-home orders were barred by sovereign immunity.[20]

Plaintiff can only override this bar by showing a defendant acted "without any authority whatsoever" under state law. *Sherwin-Williams Co. v. Crotty,* 334 F. Supp. 2d 187, 196 (N.D.N.Y. 2004). Plaintiff cannot do so. It admits that Executive Law § 29-a did not require Governor Cuomo to obtain legislative approval prior to declaring a State of Emergency. Dkt. 8, ¶ 161; *see also* Dkt. 8, ¶ 156 ("New York State Executive Law § 29-a grants Defendant Cuomo the authority, by and through, the issuance of Executive Orders"). In addition, Governor Cuomo was delegated with authority to issue EOs orders under Executive Law § 29-a. *See, e.g., People ex rel. Hamilton v. Brann,* No. 260188/2020, 2020 WL 1695541 (Sup. Ct. Apr. 2. 2020) ("Simply

---

[20]     *Elmsford Apt. Assoc., LLC v. Cuomo,* No. 20-cv-4062, 2020 WL 3498456, at *6 (E.D.N.Y. Jun. 29, 2020) ("Federal courts do not have the power to address claims that Governor Cuomo has violated state law" even if Governor overstepped his authority under Executive Law because curing alleged harm would require the court to ignore sovereign immunity and principles of federalism); *McCarthy v. Cuomo,* No. 20-cv-2124, 2020 WL 3286530, at *6 (E.D.N.Y. Jun. 18, 2020) (Eleventh Amendment barred state constitutional challenge and challenge under Executive Law § 29-a); *Talleywhacker, Inc. v. Cooper,* No. 5:20-cv-218-FL, 2020 WL 3051207, at *2 (E.D.N.C. Jun. 8, 2020) (dismissing claims under the North Carolina Constitution); *Cassell v. Snyders,* No. 20-cv-50153, 2020 WL 2112374, at *11 (D. Ill. May 3, 2020) (sovereign immunity barred state law claims); *Hartman v. Acton,* No. 2:20-cv-1952, 2020 WL 1932896, at *3 (S.D. Ohio Apr. 21, 2020) (claim against state official under state law barred by Eleventh Amendment."); *Yang v. Kelner,* No. 20-cv-3325, 2020 WL 2129597, at * 6 (S.D.N.Y. May 5, 2020) (*Ex Parte Young* does not permit a federal court to issue an injunction for a violation of state law).

put," Governor had authority under §§29-1 and 29-b.).[21]

Plaintiff argues that Governor Cuomo strong-armed the Legislature into passing the bill. But the fact remains that the Legislature delegated the Governor the power to implement EOs in the face of disease outbreak and reserved for itself the right to "terminate by concurrent resolution executive orders issued under this section at any time." Executive Law §29-a(4); *see also People v. Hood*, 67 Misc. 3d 1204(A) (City Ct. 2020) ("the executive branch's power to temporarily suspend these statutory procedural rights is not unlimited, and can be terminated by concurrent resolutions of the New York State Senate and Assembly "). As such, Plaintiff cannot show the Governor acted without any authority whatsoever, in violation of the state or federal constitutions.

## II. PLAINTIFF'S CLAIMS FAIL UNDER *JACOBSON* AND ITS PROGENY

Over a century ago, the U.S. Supreme Court taught that "a community has the right to protect itself against an epidemic of disease which threatens its members." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905). In such times, judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting "the public health, the public morals, or the public safety," or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Geller v. DeBlasio*, No. 20-cv-3566, 2020 WL 2520711, at \*4 (S.D.N.Y. May 18, 2020) (*citing Jacobson*, 197 U.S. at 31).

"This century-old historical principle has been reaffirmed just this year by a chorus of judicial voices." *League of Indep. Fitness Fac. & Trainers, Inc. v. Whitmer*, No. 20-cv-1581, 2020 WL 3468281, at \*2 (6th Cir. June 24, 2020) (collecting cases); *Slidewaters LLC V.*

---

[21]     Plaintiff did not bring a state-law claim against AG James and, instead, seeks a declaration that Executive Law § 29-a is an unconstitutional delegation of authority "to Defendant Cuomo." Dkt. 8, ¶ 222.

*Washington Dept' of Labor & Indus.,* No. 2:20-cv-0210, 2020 WL 3130295, at \*4 (E.D. Wash. June 12, 2020) (joining the "growing consensus" of district courts finding that "constitutional challenges to similar COVID-19 related measures are precluded by *Jacobson*.") (*citing Open Our Oregon v. Brown,* No. 6:20-cv-773, 2020 WL 2542861, at \*2 (D. Or. May 19, 2020) (collecting cases)). This applies with equal vigor to cases in this Circuit. *Ass'n of Jewish Camp Operators v. Cuomo,* No. 1:20-cv-0687, 2020 WL 3766496, at \*8-10 (N.D.N.Y. Jul. 6, 2020) (adhering to *Jacobson* and finding EOs related to limiting spread of disease in New York); *McCarthy,* 2020 WL 3286530, at \*4 (collecting cases rejecting challenges under *Jacobson* and finding "no argument which would make [plaintiff's] challenge likely to succeed where so many others have failed."). Thus, irrespective of Plaintiff's theory of liability, the EOs at issue must, by precedent, be viewed only through the lens of a very modest, or "rational basis," standard of review. *Whitmer,* 2020 WL 3468281, at \*1. Courts must refrain from second-guessing state governments' responses unless there is "no real or substantial relation" between the actions and the public health and safety, or the action is "beyond all question, a plain, palpable invasion of rights." *Amato,* 2020 WL 2542788, at \*7 (quoting *Jacobson, supra*).

Attempts to discredit *Jacobson* as arcane have been squarely rejected. As the court said in *Altman v. Cnty. of Santa Clara,* No. 20-cv-02180, 2020 WL 2850291, at \*8 (N.D. Cal. Jun. 2, 2020), *Jacobson* "remains alive and well – including during the present pandemic." Indeed, Chief Justice Roberts recently relied on *Jacobson* and made clear in his concurring opinion that state officials' latitude is especially broad, where, as here, officials act in areas fraught with medical and scientific uncertainty. *South Bay United Pentecostal Church v Newsom,* 140 S. Ct. 1613, 1613-14 (2020). Two Circuit Courts have also found that a district court errs by not using *Jacobson* to evaluate pandemic-related restrictions on constitutional rights. *In re Abbott,*

954 F.3d at 785; *In re Rutledge,* 956 F.3d 1018, 1028 (8th Cir. 2020).

Plaintiff cannot show that the EOs have no real or substantial relationship between the actions taken and the public health and safety. After nightly viewing of New York's rocketing positive COVID-19 case and death counts, New York has emerged as a bright spot in the country, with marked reduction in positive cases, hospitalization and death rates because of the New York Pause orders implemented by Governor Cuomo to protect the public's health and safety. Even if Plaintiff disagreed with this assessment, it cannot seriously be disputed that limiting in-person contact in the workforce to only essential business activity bore a real and substantial relation to suppressing the spread of the COVID-19 virus. Thus, Plaintiff has not raised a colorable basis to suggest that Defendants acted without any rational basis whatsoever, and all of Plaintiff's claims fail under *Jacobson* and its progeny.

## III.     STATE-LAW CHALLENGES TO EXECUTIVE LAW § 29-a FAIL

Plaintiff argues that Executive Law § 29-a violates the separation-of-powers doctrine. Dkt. 8, ¶¶ 218-222. As noted above, sovereign immunity and *Jacobson* foreclose these claims. Even were it otherwise, Plaintiff's claims fail for a host of additional reasons

Preliminarily, "facial constitutional challenges are disfavored." *Overstock.com, Inc. v. New York State Dep't of Taxation & Fin.*, 20 N.Y.3d 586, 593 (2013). Legislative enactments enjoy a strong presumption of constitutionality and parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt. *Id.* Courts must avoid interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional, *id.*, and must, instead, assume that the Legislature intended to enact a statute which was in harmony with the United States Constitution and the Constitution of the State of New York" *People v. Epton*, 19 N.Y.2d 496, 509 (1967). In New York, a party challenging the constitutionality of a statute "bears the heavy burden of showing

23

that a statute is so unrelated to the achievement of any combination of legitimate purposes as to be irrational." *People v. Knox*, 12 N.Y.3d 60, 69 (2009).

Here, there is no question that Executive Law § 29-a empowers the Governor to issue EOs during the pandemic to the extent "necessary to cope with the disaster." Exec. Law § 29-a (1). Under New York's Constitution, the "legislature may enact a general statute that reflects its policy choice and grants authority to an executive agency to adopt and enforce regulations that expand upon the statutory text by filling in details consistent with that enabling legislation." *Matter of LeadingAge NY, Inc. v Shah*, 32 N.Y.3d 249, 259 (2018). Only when an agency promulgates a rule beyond the power it was granted by the legislature, does it usurp the legislative role and violate the separation-of-power doctrine. *Id.* (citing *Matter of NYC C.L.A.S.H. v. N.Y. State Office of Parks, Recreation & Historic Pres.*, 27 N.Y.3d 174, 178 (2016)).

Moreover, the Court's role "is not to question the efficacy or wisdom of the means chosen by the agency to accomplish the ends identified by the legislature. Rather, courts ask only whether the agency acted within the scope of its authority." *Matter of LeadingAge NY, Inc.*, 32 N.Y.3d at 261. The Legislature is not required to supply agencies with rigid marching orders, especially where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitutes the very essence of the Act. *Citizens for Orderly Energy Policy, Inc. v Cuomo*, 78 N.Y.2d 398, 410-11 (1991). Because, as here, the "wisdom and prudence of the Legislature's flexible approach" is not to be questioned, particularly where the Legislature delegated broad authority to the Governor to act in the midst of the pandemic, Plaintiff's claim that Executive Law § 29-a violates the separation-of-powers doctrine fails on its face.

Plaintiff's challenge to Executive Law § 29-a as applied similarly fails. Plaintiff argues

24

that the statute only allowed the Governor to take such steps that were *"necessary to cope with the disaster* or if *necessary to assist or aid in coping with such disaster."* Dkt. 8, ¶ 167 (emphasis in original); Dkt. 8, at 3 (caption "j"). *Jacobson* and its progeny foreclose this claim because Plaintiff cannot show that there was no rational basis for the EOs. Moreover, the EOs are "consistent with the State's policy of limiting social and professional interactions and community contact transmission of COVID-19." *Parascando v. Monaheit,* 123 N.Y.S.3d 198, 200 (2d Dep't 2020).

Federal courts accord substantial deference to the agency's interpretations of the statutes that it administers. 206 F.3d 253, 262 (2d Cir. 2000). Similarly, the New York Court of Appeals has made clear that agencies have flexibility in determining the best methods for pursuing objectives articulated by the legislature. *Matter of LeadingAge*, 32 N.Y.3d at 260. As stated by the Court of Appeals in *Johnson v Pataki*, 91 N.Y.2d 214, 223 (1997), "when the Governor acts by Executive Order pursuant to a valid grant of discretionary authority, his actions are largely beyond judicial review." *Id.* at 223 (collecting cases). Ironically, if the "Take Care clause" has any application to the case at bar, it vested in the Governor the power to combat a medically and scientifically novel virus that was ravaging this state.[22]

---

[22]    As an aside, Article 78 is generally the proper vehicle to determine whether a statute has been applied in an unconstitutional manner. *Top Tile Bldg. Supply Corp. v. New York State Tax Com.*, 94 A.D.2d 885 (3d Dep't 1983) (citing *Matter of Overhill Bldg. Co. v Delany*, 28 N.Y.2d 449, 458 (1971)) (although not the constitutionality of the statute itself). *Id.* Here, Plaintiff attacks both the statute and its application, so it would have to have brought an Article 78 proceeding if it challenged the application in State Court. Under well-established Article 78 law, when the "interpretation of a statute *or its application* involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute." *Town of Lysander v. Hafner*, 96 N.Y.2d 558, 565 (2001) (emphasis in original). Because Plaintiff complains that Defendants' actions "are neither reasonably necessary to aid in combatting the COVID-19 pandemic, nor the minimum deviation from any suspended statute, law, etc.," Dkt. 8, ¶ 170, this amounts to a mere dispute over the

## IV. PLAINTIFF'S COMMERCE CLAUSE CLAIM FAILS

Plaintiff claims it represents clients who regularly conduct business, including essential business, throughout the United States and internationally, and asserts the Governor's EOs, and the actions taken by AG James actions regarding them, discriminated against and placed an excessive burden on interstate commerce. Dkt. 8, ¶¶ 120, 123, 237. A state statute or regulation violates the dormant Commerce Clause only if it (1) "clearly discriminates against interstate commerce in favor of intrastate commerce," (2) "imposes a burden on interstate commerce incommensurate with the local benefits secured," or (3) "has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." *Selevan v. New York Thruway Auth.,* 584 F.3d 82, 90 (2d Cir. 2009). Thus, Plaintiff challenges the EOs under the first and second prong of the Dormant Commerce Clause doctrine.

Plaintiff's claim fails easily. The Dormant Commerce Clause prevents only "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Dep't of Environ. Quality of State of Oregon,* 511 U.S. 93, 99 (1984). To state a claim for discrimination in violation of the Commerce Clause, a plaintiff must "identify an [ ] in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors." *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 169 (2d Cir. 2005). As the Second Circuit made clear in *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 218 (2d Cir. 2004), the "bottom line is therefore that,

---

appropriateness of the Governor's actions. It is not the function of the courts, however, to substitute its judgment for that of the body reviewed, but only to determine if the action sought to be reviewed was authorized and can be supported on any reasonable basis." *S.S. Silberblatt, Inc. v. Phalen,* 41 Misc. 2d 899, 904 (Sup. Ct. Albany Cnty. 1964) (citing *Matter of Kayfield Constr. Corp. v. Morris,* 15 A.D.2d 373, 379 (1st Dep't 1962).

under either the 'clear discrimination' or the *'Pike'* forms of analysis, 'the minimum showing required . . . is that the [state regulation] have a disparate impact on interstate commerce."

The burden of proving differential treatment lies with the party challenging the law. *C & A Carbone, Inc. v. County of Rockland, NY,* No. 08-cv-6459-ER, 2014 WL 1202699, at \*5 (S.D.N.Y. Mar. 24, 2014) (citing *USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1281 (2d Cir.1995)). Importantly, the Commerce Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations. *Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 127 (1978). At best, Plaintiff alleges that "Defendants have discriminated against, and placed an excessive burden upon, HoganWillig, which regularly engages in interstate commerce." Dkt. 8, ¶ 124. This is insufficient to show differential treatment of interstate businesses.

Nor has Plaintiff alleged any facts suggesting differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. The EOs did not impose interstate tariffs, tax interstate transactions differently, or in any way favor New York businesses. To the contrary, the EO's, by definition, can restrict *only* New York businesses. If Plaintiff is believed, other states relaxed stay-at-home orders while New York did not, Dkt. 8, ¶ 84, and, thus, just the opposite would be true—intrastate businesses activities would be impacted to a greater degree. *See, e.g., Antietam Battlefield KOA v. Hogan,* No. 20-cv-1130, 2020 WL 2556496, at \*15 (D. Md. May 20, 2020) ("If anything, the order negatively impacts intrastate commerce to a greater degree, as it only applies to Maryland businesses").

Even if Plaintiff could identify an in-state competitor that was favored by the EOs, directly or indirectly, at the expense of out-of-state competitors, Plaintiff must show that the EOs placed an excessive burden on interstate commerce that was not commensurate with the local

benefits secured. *Pike v. Bruce Church, Inc.,* 387 U.S. 137, 142 (1970). The burdens must be "clearly excessive in relation to the putative local benefits." *Freedom Holdings, Inc.,* 357 F.3d at 218 (citing *Pike,* 387 U.S. at 142). "[T]he statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Id.* (citing *Nat'l Elec. Mfrs.,* 272 F.3d at 109). Under the *Pike* test, if no such unequal burden be shown, a reviewing court need not proceed further. *Id.* at 217-18.

Plaintiff has not alleged an unequal burden on interstate commerce that it is qualitatively or quantitatively different than that imposed on intrastate commerce. Nor can Plaintiff show a burden that is "clearly excessive" in relation to the local benefit received, as is its burden. *C & A Carbone, Inc.,* 2014 WL 1202699, at *11. Plaintiff admits that combatting COVID-19 is an "objectively positive goal," Dkt. 8, ¶ 121, but alleges that means utilized placed an incommensurate burden on its business. As the court in *Omnistone Corp. v. Cuomo,* No. 20-cv-2153, Dkt. 18, at *5 (E.D.N.Y. May 15, 2020), recently said in reviewing a Commerce Clause challenge, "[w]hen movants seek to compare preventing widespread sickness and death to their right to [conduct their business], not much reflection is required to resolve whether this presents a serious question."

The Supreme Court explained that if safety justifications are not illusory, courts "will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 687-88 (1981). Any suggestion by Plaintiff that safety justifications in the face of the COVID-19 pandemic were illusory would ignore not only science, but caselaw from New York and across the country.[23] It

---

[23]    *See, e.g., Murray v. Cuomo,* No. 1:20-cv-03571, 2020 WL 2521449, at *11 (S.D.N.Y. May 16, 2020) ("Controlling the spread of the disease in order to contain the pandemic, minimize deaths, allocate scare hospital resources, and prevent a larger public health catastrophe

28

would also be at odds with *Jacobson* and its progeny.

Finally, "the state may legislate freely upon those phases of the commerce which are left unregulated by the nation." *Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 155 (1942). That is exactly what New York and every other state has done, as the federal government—and the President himself—has repeatedly left it to the States to determine how best to respond to the pandemic and determine when conditions are appropriate for re-opening their economies. In sum, Plaintiff has not stated and cannot state a colorable claim under the Commerce Clause.

## V.   **PLAINTIFF'S CONTRACT CLAUSE CLAIM IS MERITLESS**

Plaintiff's fourth claim alleges that Defendants' acts violated the Contract Clause of the United States Constitution. Dkt. 8, ¶¶ 240-245. Plaintiff claims it contracted to provide legal work for clients, "many of which are 'essential' under ESD's Guidance." Dkt. 8, ¶ 243. While Plaintiff admits its employees can work remotely, Plaintiff alleges that "client comfort, security of non-public information, and attorney-client privilege factors" required access to its office, *id.* ¶ 244, and that "in-person meetings" with clients were necessary to fulfill its contractual obligations. *Id.* Plaintiff asks the Court to enjoin the Defendants from enforcing the EOs to the extent they impede Plaintiff's contracts with clients and unspecified third-parties. *Id.* ¶ 245.

To state a viable Contracts Clause claim, a complaint must allege sufficient facts showing a state law has "operated as a substantial impairment of a contractual relationship." *Nunez v.*

_____

(with its attendant other negative impacts on society) is a powerful compelling government interest."); *Lighthouse Fellowship v. Fellowship Church v. Northam*, No. 2:20-cv-204, 2020 WL 2614626, at \*8 (E.D. Va. May 21, 2020) (Orders pursue the goal of slowing the spread of a deadly pandemic and saving lives); *Calgary Chapel of Bangor v. Maine*, No. 1:20-cv-00156, 2020 WL 2310913, at \*7, 9 (D. Me. May 9, 2020) (governor's orders directed at limiting the spread of COVID-19, demonstrated a substantial relation to the interest of protecting public health); *Friends of Danny DeVito v. Wolf*, 2020 WL 1847100, at \*24 (Pa. Apr. 13, 2020) ("There is no question that the containment and suppression of COVID-19 and the sickness and death it causes is a substantial governmental interest.").

*Cuomo,* No. 11-cv-3457, 2012 WL 3241260, at *6 (E.D.N.Y. 2012) (citing *Harmon v. Markus,* 412 Fed App'x 420, 423 (2d Cir. 2011), *cert. denied,* 566 U.S. 962 (2012)). There are three components to this inquiry: (1) whether a contractual relationship exists; (2) whether a change in law impairs that contractual relationship; and (3) whether the impairment is substantial. *Id.*

"Even if a state law substantially impairs a contract, it will not be deemed unconstitutional so long as it is justified by 'significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem.'" *CFCU Cmty Credit Union v. Hayward,* 552 F.3d 253, 267 (2d Cir. 2009) (citing *Energy Reserves Group, Inc. v. Kansas Power & Lighting Co.,* 459 U.S. 400, 41 (1983); *Nunez,* 2012 WL 3241260, at *6. As the Second Circuit observed, the Contracts Clause "does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to any rights under contracts between individuals.'" *Buffalo Teachers Fed. v. Tobe,* 464 F.3d 362, 67 (2d Cir. 2002) (quoting *Allied Structure Steel Co. v. Spannaus,* 438 U.S. 234, 241 (1978)).

Plaintiff's allegations fall woefully short of stating a plausible Contracts Clause claim. Plaintiff has not pointed to any specific contract and, instead, alludes to amorphous contracts of unknown date or substance. This alone is fatal to Plaintiff's claim. *See, e.g., Anderson v. Cameron,* No. 13-cv-578V, 2016 WL 11259015, at *6 (W.D.N.Y. Sept. 14, 2016), *adopted,* 2017 WL 2240253, at 2 (W.D.N.Y. 2017) (granting motion to dismiss Contract Clause claim because "[p]laintiff also has not alleged the existence of a contract or a change in law that impaired that contract, as is required to state a claim for violation of the Contracts Clause.").

Courts must not only find an impairment of an actual contract, they must also determine the "extent to which reasonable expectations under the contract have been disrupted" in order to determine if there is a substantial burden. *CFCU Cmty. Credit Union,* 552 F.3d at 267-68. But

Plaintiff has not pointed to any actual contract, so it has not plead and cannot show an actual impairment, let alone a substantial one. Moreover, Plaintiff's office remained open, it received an ESD exemption to permit in-office work necessary to support essential businesses, its employees were able to work from home, numerous employees and clients worked in the office, and numerous other measures were in place to assist during the crisis—*i.e.* remote court appearances, remote notarization, extension of filing dates courts, to name just a few. Given as much, Plaintiff cannot allege a substantial impairment on any purported contract.

In addition to failing every component of the three-part test, Plaintiff's Contracts Clause claim derails completely when examined against the backdrop of the worldwide pandemic. Plaintiff cannot seriously dispute the EOs were intended to serve a legitimate public purpose. To be sure, they succeeded in accomplishing that purpose. Unlike many other states where COVID-19 is on the rise and business and activities are forced to close again, New York is seeing record lows in daily counts of infection, hospitalizations, and death. Given these facts, District Judge Brown's decision in *Onmistone Corp. v. Cuomo,* No. 2:20-cv-02153, Dkt. 18 (E.D.N.Y. May 15, 2020), resounds loudly here. Not only did the Court note that "many of the issues raised" by the plaintiff "did not even qualify as legitimate issues," *id.* at 4, it made clear that "in the midst of a catastrophic global pandemic of a kind not seen for more than a century, it is difficult to imagine how counsel could argue that that 'the EO does not serve a legitimate public purpose' in support of plaintiffs' Contract Clause claim." *Id.* at 4-5. For the same reasons, Plaintiff cannot show that the EOs did not serve a legitimate purpose and the Court should, similarly, reject Plaintiff's baseless Contracts Clause claim.

## VI. PLAINTIFF HAS NOT STATED A SUBSTANTIVE DUE PROCESS CLAIM

Plaintiff's fifth claim asserts the EOs unreasonably limited its ability to conduct business, in violation of its substantive due process rights under the Fifth and Fourteenth Amendments. Dkt. 8, ¶¶ 246-253. Those allegations are meritless. First, a substantive due process claim will be dismissed as superfluous where another Constitutional provision provides an explicit textual source of protection and the plaintiff has already sought relief under it. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("If a constitutional claim is covered by a specific constitutional provision [ ] the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Plaintiff invoked and sought relief under other specific Constitutional provisions. Dkt. 1, ¶¶ 234-295. Thus, Plaintiff's substantive due process claim is duplicative of those claims and must be dismissed. *Lanier*, 520 U.S. at 272 n.7.

Second, substantive due process only applies to fundamental constitutional rights such as procreation, marriage, and family life. Generally, interests related to employment are not protected by substantive due process. *Walker v. City of Waterbury*, 361 Fed. App'x 163, 165 (2d Cir. 2010). Plaintiff, who remained open for business and whose employees conducted business in-person and remotely, cannot show that a fundamental constitutional right was abridged.

Third, "substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Robles v. Dennison*, 449 Fed. App'x 51, 54-55 (2d Cir. 2011) (only the most egregious official conduct can be arbitrary in the Constitutional sense). Plaintiff acknowledges the EO's were issued pursuant to the Governor's emergency powers in response to the COVID-19 pandemic, Dkt. 8, ¶¶ 21-22, that non-essential businesses were forced to close for public health reasons, *id.*, that Plaintiff received an exemption as an

essential business, *id.*, ¶¶ 23-29, and that it voluntarily allowed employees to work from home. Plaintiff's speculation that the EOs were unnecessary based on after-the-fact statistical data, *id.* ¶¶ 35-42, 89-111, flies in the face of data from the WHO, CDC, the New York Department of Health, and, indeed, this Court's general orders, which limited in-person contact in order to fight the virus and protect the Court and its staff. Thus, Plaintiff asks the Court to second-guess the decisions made to protect public health, something *Jacobson* specifically prohibits.

Lastly, Plaintiff does not allege conduct that is "outrageously arbitrary" or a "gross abuse" of governmental authority. Reasonable minds may differ over the right response to a global pandemic, but a difference in opinion does not amount to a substantive due process violation. Thus, that claim should be dismissed. *N.Y. State Rest. Ass'n v. N.Y. City. Dep't of Health & Mental Hygiene*, 303 F. Supp. 2d 265, 271-73 (E.D.N.Y. 2004).

## VII. PLAINTIFF HAS NOT STATED A PROCEDURAL DUE PROCESS CLAIM

Plaintiff's sixth claim asserts Defendants ordered Plaintiff to cease/limit its operations without a hearing or other formal procedure, in violation of its procedural due process rights under the Fifth and Fourteenth Amendments. Dkt. 8, ¶¶ 254-258. That claim also fails on myriad grounds.

First, like its substantive due process claim, Plaintiff must show that state action deprived it of a property interest protected by the Fourteenth Amendment. *Waronker v. Hempstead Union Free Sch. Dist.*, 788 Fed. App'x 788, 793 (2d Cir. 2019) (Summary Order). Not all property interests are constitutionally protected. *Id.* "[B]usiness in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense." *Murtaugh v. New York*, 810 F. Supp. 2d 446 (N.D.N.Y. 2011) (citing *College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)). Plaintiff claims the Defendants

unreasonably interfered with the Plaintiff's normal business operations. Dkt. 8, ¶¶ 61, 71, 75, 254-258. Where, as here, Plaintiff alleges only an impact on its business operations, it has not stated a plausible procedural due process claim. *NRA of Am. v. Cuomo*, 350 F.Supp.3d 94 (N.D.N.Y. 2018); *Chrebet v. Cnty. of Nassau*, 24 F. Supp. 3d 236, 246 (E.D.N.Y. 2014).

Second, even if Plaintiff had plead the deprivation of a protected property right, it still has not alleged a procedural due process claim. Plaintiff asserts its due process rights were violated when Defendants "ordered [it] to cease all or most of its operations without any sort of hearing or formal procedure," Dkt. 8, ¶ 257, claiming AG James' "arbitrary" and/or unreasonable actions made Plaintiff's attempts to comply with the EOs a "guessing game." *Id.* ¶¶ 62-64. But in cases like this where Plaintiff is claiming that a state official deprived it of a property or liberty interest based upon a random, unauthorized act, there is no violation of the due process clause so long as the State provides a meaningful post-deprivation remedy. *Hellenic Am. Neighborhood Cmty. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Because Plaintiff had an adequate post-deprivation remedy in the form of an Article 78 proceeding in State court, wherein the alleged arbitrariness of the EOs (and/or the enforcement of the same) could be challenged, it cannot state a plausible due process claim. *Id.* at 881 (holding that an Article 78 proceeding "is a perfectly adequate post-deprivation remedy").[24] Thus, Plaintiff's procedural due process claim fails irrespective of whether it pursued this remedy.

_____

[24]     *See also Hobbs v. County. of Westchester*, No. 00-cv-8179, 2003 WL 21919882 (S.D.N.Y. Aug. 13, 2003) *aff'd* 397 F.3d 133 (2d Cir. 2005) (availability of Article 78 proceeding provided sufficient procedural safeguards to Plaintiff and others affected by executive order to satisfy due process).

## VIII.    PLAINTIFF HAS NOT STATED A TAKINGS CLAUSE CLAIM

Plaintiff's seventh claim asserts the EO's deprived them of "all economically beneficial use" of their property, for which the Defendants have failed to pay Plaintiff just compensation, in violation of the Takings Clause. Dkt. 8, ¶¶ 259-266. This claim also fails for several reasons.

First, the claim is not ripe. "The Takings Clause of the Fifth Amendment provides that no private property shall be taken for public use, without just compensation." *TZ Manor, LLC v. Estate of Daines*, 750 Fed. App'x 26, 28 (2018) (Summary Order). The law recognizes two forms of takings: physical takings and regulatory takings. *Id.* "A regulatory taking occurs when the government acts in a regulatory capacity and the state regulation goes too far and in essence 'effects a taking'." *Id.* (citing *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d at 374). "A regulatory taking claim, however, is unripe where a remedy potentially is available under the state constitution's provision." *National Fuel Gas Supply Corp. v. Town of Wales*, 904 F. Supp. 2d 324, 334-35 (W.D.N.Y. 2012) (citing *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002)). Thus, "[t]o withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and denied." *Anderson v. Cameron*, 2016 WL 11259015, at *5. Because Plaintiff does not allege that it sought compensation through State procedures and its claim was denied, its Takings Clause claim is not ripe and should be dismissed.

Plaintiff's Taking Clause claim is also substantively meritless. There are two types of regulatory takings: categorical and non-categorical. *Sherman v. Town of Chester*, 752 F.3d 554, 565 (2d Cir. 2014). "A categorical taking occurs in 'the extraordinary circumstances when *no* productive or economically beneficial use of land is permitted.'" *Id.* (emphasis in original) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330

(2002)). "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Id.* "A plaintiff seeking to show a regulatory taking has a heavy burden." *Nat'l Fuel Gas Distrib. Corp. v. NYSERDA*, 265 F. Supp. 3d 286, 293 (W.D.N.Y. 2017).

At all times Plaintiff continued business activities; only the scope of what activities were "essential" and thus permitted on-site was in dispute. Dkt. 8, ¶¶ 30-34, 51, 61-64, 71, 74-75, 114-115. Thus, Plaintiff has alleged a non-categorical taking that should be analyzed under the *Penn Central* framework.[25] *Sherman*, 752 F.3d at 565.

Under this rubric, the Amended Complaint has not plausibly stated a Takings Clause claim. While Plaintiff opines on the economic impact the EOs had on the "the physical, mental, and emotional health of New York State residents" generally (Dkt. 8, ¶¶ 89-111), and the State economy as a whole (Dkt. 8, ¶¶ 215, 216(a)-(j)), it is devoid of details concerning the real economic impact of the EOs on Plaintiff's bottom line. By its own admission, Plaintiff continued to operate with its employees working remotely to the extent possible, even on non-essential matters. But "[i]t is well settled that a 'taking' does not occur merely because a property owner is prevented from making the most financially beneficial use of a property."[26] *Kabrovski v. City of*

---

[25]    Plaintiff's conclusory claims that the restrictions imposed by the EOs have eliminated any economically beneficial use of its property, such that a categorical taking has occurred, are contradicted by its own allegations describing the in-person operations that continue to take place there. Dkt. 8, ¶¶ 28-30, 33-34, 45-46, 138. Therefore, Plaintiff's conclusory claim of a categorical taking need not be taken as true on this motion to dismiss. *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1029 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

[26]    "It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercises of its police powers." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992).

*Rochester*, 149 F. Supp. 3d 413, 424-25 (W.D.N.Y. 2015). Plaintiff has not described any business it has been unable to conduct, nor has it reasonably articulated any real financial impact it has incurred, or clients it cannot serve, because of the Defendants' acts. "Overall, the pleading fails to plausibly allege an economic impact that rises to the level of a taking." *Id.* Nor has Plaintiff discussed any "distinct-investment backed expectations" held by Plaintiff for their property.

As significantly, the character of the government action challenged here—*i.e.*, an emergency response to a global pandemic that resulted in temporary economic restrictions being placed on Plaintiff's property for the protection of the common good—further undermines its claim that a taking has occurred. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225 (1986) ("This interference with the property rights of an employer arises from a public program that adjusts the benefits and burdens of economic life to promote the common good and, under our cases, does not constitute a taking requiring Government compensation.").

In a recent case raising a similar Fifth Amendment challenge to numerous COVID-related EOs, the Pennsylvania Supreme Court held that the movants had failed to state a regulatory taking claim, finding the temporary impact on their business, and the Pennsylvania Governor's reasoning for imposing the restrictions at issue on those properties, "namely, to protect the lives and health of millions of Pennsylvania citizens, [was] undoubtedly [ ] a classic example of the use of the police power to protect the lives, health, morals, comfort and general welfare of the people," and was not a regulatory taking. *Friends of Danny DeVito*, 227 A.3d at 896 (citing *Manigault v. Springs*, 199 U.S. 473, 480 (1905)). The same result obtains here.

## IX. PLAINTIFF HAS NOT STATED AN EQUAL PROTECTION CLAIM

"The equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). Ordinarily, "to prove an equal protection

violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Id.* But "a plaintiff who does not allege membership in a protected class may, nonetheless, bring a 'class of one' equal protection claim." *Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 422-23 (W.D.N.Y. 2015). To state a "class of one" discrimination claim sufficient to survive a motion to dismiss, "the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff asserts Defendants' enforcement of the EOs has subjected it to disparate treatment as compared to similarly situated businesses (i.e. other law firms), without a rational basis, in violation of Plaintiff's Equal Protection rights. Dkt. 8, ¶¶ 267-274. Thus, Plaintiff appears to raise a "class of one" equal protection claim. *Id.*

For a "class of one" equal protection claim to survive dismissal, Plaintiff must identify at least one other similarly situated party that was treated more favorably. *Kabrovski*, 149 F.Supp.3d at 423; *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8 (S.D.N.Y. 2017) (collecting cases). "General allegations that would previously have overcome a motion to dismiss on a 'class of one' equal protection claim are no longer sufficient." *Kenmore Mercy Hosp. v. Daines*, No. 09-cv-162, 2011 WL 4368564, at *16, 18 (W.D.N.Y. Sept. 18, 2011).

The Complaint does not plausibly identify any similarly situated business entities that were treated differently than Plaintiff. Its claim that other law firms around the state were free to operate without any interference by the Defendants (Dkt. 8 ¶¶ 85, 142, 270), fails to actually identify any such firms, and/or what unspecified preferential treatment those unnamed entities received. This is particularly so, given that Plaintiff received an exemption as an essential

business. Thus, its failure to plausibly allege a "class of one" equal protection claim warrants dismissal. *Kabrovski*, 149 F. Supp. 3d at 423; *Kenmore Mercy*, 2011 WL 436584, at *16, 18.

An equal protection claim must also plausibly allege there was no rational basis for the difference in treatment received. *Progressive*, 889 F.3d at 49. These allegations must permit the inference that the alleged difference in treatment "lacks any reasonable nexus with a legitimate governmental policy," and, that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." *Id.*

Plaintiff's equal protection claim does not survive this analysis. The EOs were issued as an emergency response to protect the public's health and welfare during an unprecedented public health crisis, and thus plainly served a legitimate governmental purpose. The Complaint claims this dispute arose after Defendants raised questions over whether Plaintiff was in compliance with the EO's. Dkt. 8, ¶¶ 43-58. But rather than exclude the possibility of mistake, Plaintiff's correspondence repeatedly claims that Defendants were acting on incorrect information and/or in response to erroneous reports of its noncompliance—*i.e.,* based on mistake.[27] Thus, even if Plaintiff had been treated differently than other similarly situated businesses, Plaintiff has still not plausibly alleged an equal protection claim because the Complaint states that treatment was based on mistake and not purposeful action. *Progressive*, 889 F.3d at 49.

---

[27]    *See, e.g.*, Dkt. 8-1, at 2-3 ("I assume you must have received a complaint from someone who was directed that they need to work at an office who feels they are not essential."); Dkt. 8-2, at 2 ("We have received multiple complaints that attorneys, paralegals, and support staff report to work from all departments within the firm, regardless of the type of matter being worked on and the fact that the work could be performed remotely."); Dkt. 8-3, at 2 ("Your concern about the number of employees reporting to work [ ] is based, I believe, on misinformation."); Dkt 8-5, at 12 ("Your statement that as the employer, we surely know who is reporting to work every day, [ ] is only partially correct."); Dkt. 8-5, at 14 ("Your data that HoganWillig is the only tenant currently occupying space at 2410 is wrong, regardless of the mandates under which you believe other offices are operating.").

Lastly, even if Plaintiff was subjected to differential treatment by the enforcement of the EOs, numerous Federal courts have rejected similar challenges to COVID-related EOs, finding the nature of the pandemic permitted differential treatment of businesses within a single industry, and/or between different types of businesses open to the public. *See, e.g., Talleywhacker*, 2020 WL 3051207, at \*9; *Six v. Newsom*, No. 8:20-cv-00877, 2020 WL 2896543, at \*7 (C.D. Cal. May 22, 2020). The same result obtains here.

## X.    THE EO'S ARE NOT UNCONSTITUTIONALLY VAGUE

Plaintiff's ninth claim asserts the EOs are unconstitutionally vague. Dkt. 8, ¶¶ 275-279. Because the Complaint only specifically discusses the impact of EOs 202.6 and 202.8, presumably those are the orders targeted in this proceeding. *See id.* ¶¶ 21-27, 74. Plaintiff does not state whether its vagueness challenge is facial or as-applied.

An enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The "degree of vagueness that the Constitution tolerates [ ] depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982). As the Supreme Court explained, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.* at 498-499. The temporary restriction of a law firm's ability to conduct non-essential in-person legal services during a public health emergency is an economic regulation that does not implicate any fundamental right. Challenges of this type are generally disfavored. *Farrell v. Burke*, 449 F.3d 470, 495 (2d Cir. 2006). The economic nature of

these restrictions also lends a more lenient standard to this Court's review of the EO's on vagueness grounds. *Hoffman Estates*, 455 U.S. at 498.

"Courts have looked with disfavor on facial vagueness challenges to statutes that do not implicate fundamental rights." *Farrell*, 449 F.3d at 495. "To succeed the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Id.* If a measure is not void-for-vagueness as applied, it cannot be impermissibly vague in all applications. *Id.* at 485 (citing *Hoffman Estates*, 455 U.S. at 495).

## A. Plaintiff has not Plausibly Alleged the EOs Are Unconstitutionally Vague as Applied to its own Business Operations.

"When the challenge is vagueness 'as-applied' – there is a two-part test: a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *Farrell*, 449 F.3d at 470.

Here, although EOs 202.6 and 202.8 no longer apply to Plaintiff, the former required non-essential businesses to reduce their in-person workforces by 50%, Dkt. 8, ¶ 22, and the latter modified EO 202.6 by requiring non-essential businesses to reduce their in-person workforces by 100%. *Id.* ¶ 23. Businesses with an "essential" designation from ESD were not subject to those restrictions, to the extent in-person staff was needed to provide services for other "essential" business. *Id.* ESD guidance explained that law firms like Plaintiff could continue to perform work for any business or service remotely, though in-person/in-office work was limited to matters in support of "essential" businesses. *Id.* ¶ 25. The "essential" business designation Plaintiff received from ESD similarly explained that Plaintiff's designation as "essential" business was limited to the work performed for other "essential" businesses. *Id.* ¶ 27.

Substantively, the EOs' restrictions were not vague in any way. Plaintiff was permitted to conduct in-person office work for other essential businesses. Work for non-essential businesses had to be performed remotely/off-site. As a sophisticated law firm with dozens of attorneys, Plaintiff was uniquely qualified to read and understand the EOs and seek guidance if questions arose, which is exactly what occurred. Dkt. 8-1, 8-2, 8-3, 8-4, 8-5. Plaintiff's letters show that it understood these rules.[28] The real problem was Plaintiff felt the work required to comply with the EOs was too cumbersome and did not want to do it.[29] That Plaintiff did not like the responses or directives it received does not mean the EOs are unconstitutionally vague.

Nor did the EOs permit arbitrary or discriminatory enforcement. Again, the former EOs allowed Plaintiff to conduct in-person work at its offices for other "essential" businesses, but in-person was not allowed for "non-essential" business and telecommuting or WFH was required. These are the precise restrictions the AG's office was attempting to encourage the Plaintiff to implement. Dkt. 8-2, at 2; Dkt. 8-4, at 1.[30]

---

[28] Dkt. 8-3, at 5 ("[Plaintiff] represents [ ] many businesses deemed 'essential' by the Empire State Development Corp. and referenced in various Executive Orders"); id.("HW encourages even those employees who are working on essential matters to do so remotely whenever possible."); Dkt. 8-3, at 8 (discussing how real estate transactions had been deemed "essential" such that in-person work would continue); Dkt. 8-5, at 5 ("Anyone who isn't performing an essential task must work from home.").

[29] Dkt. 8-1, at 2 ("What would be unduly burdensome and oppressive would be for me to have to go to every employee every day and multiple times a day and find out what type of matters they are working on . . . Can you imagine this task if there were thirty people here? Or 35?"); Dkt. 8-5, at 12-13 (claiming, "[t]here is no mechanism that I am aware of at this time of tracking exactly who is, and who is not, in the Amherst office," then on the very next page, reporting statistics compiled by the Firm's health and safety officer, who did just that).

[30] The determination of which businesses would be deemed "essential" was made on a case-by-case basis by non-party ESD, a separate governmental entity from the Defendants. Thus, while Plaintiff does not challenge and instead touts its "essential business" designation, it cannot show that Defendants arbitrarily or discriminatorily applied /or withheld "essential" designations to interfere with or control Plaintiff's day-to-day operations.

## B. Plaintiff is Precluded from Raising a Facial Vagueness Challenge.

Outside of the First Amendment context, void-for-vagueness challenges are generally only considered "as applied," or "in light of the specific facts of the case and not with regard to the [law's] facial validity." *United States v. Rybicki*, 354 F.3d 124, 129-30 (2d Cir. 2003) (collecting cases). The Plaintiff's complaints do not arise in the First Amendment context and the Complaint has not plausibly alleged an "as-applied" vagueness challenge, as discussed *infra*.

A few Second Circuit cases have permitted facial vagueness challenges outside the First Amendment context, but only where the challenge is raised in the presence of some constitutionally protected right. *Dickerson v. Napolitano*, 604 F.3d 732, 743-45 (2d Cir. 2010) (discussing both standards of review). But again, the EO's temporary limitations on conducting in-person office work are economic restrictions that do not implicate any fundamental rights. Therefore, Plaintiff is precluded from raising a facial vagueness challenge here.

## XI.    PLAINTIFF'S NINTH AND TENTH AMENDMENT CLAIMS FAIL

Plaintiff alleges that "Defendants' Executive Orders, restrictions, regulations, policies, practices, acts, and omissions throughout the COVID-19 pandemic are a violation of Plaintiff's rights under the Ninth and Tenth Amendments of the United States Constitution." Dkt. 8, ¶¶ 280-285. There is no non-frivolous basis for these claims.

"The Ninth Amendment is not an independent source of individual rights; rather, it provides a 'rule of construction' that [courts] apply in certain cases." *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) (citing *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983)); *Rini v. Zwin*, 886 F. Supp. 270, 289-90 (E.D.N.Y. 1995) (collecting cases). Also, the Ninth Amendment has not been interpreted to be incorporated into the due process clause of the Fourteenth Amendment, and thus has no applicability to claims against non-federal actors. *Abrahams v.*

*State of Conn. Dep't of Soc. Servs.,* No. 3:16-cv-00552, 2018 WL 995106, at \*10 (D. Conn. Feb. 21, 2018).

The Tenth Amendment "was adopted for the specific purpose of preserving federalism and state sovereignty." *Woodruff v. Rediehs,* No. 8:18-cv-522, 2018 WL 2175549, at \*3 (N.D.N.Y. May 11, 2018); *Padavan v. United States,* 82 F.3d 23, 29 (1996) ("The purpose of the Tenth Amendment is to limit Congress from usurping power that was reserved to the states."). "[T]here is nothing in the history of its adoption to suggest that it was more than declaratory of the relationship between the national and state governments[.]" *Woodruff,* 2018 WL 2175549, at \*3. Indeed, it does not protect any specific personal right. *Varricchio v. Chalecki,* No. 3:14-cv-00937, 2016 WL 5422046, at \*8 (D. Conn. Sept. 28, 2016), *aff'd* 701 Fed. App'x 65 (2d Cir. 2017). Only the Federal government, by asserting a power not surrendered by the States or the people, can be alleged to have violated the Tenth Amendment. *Warren v. U.S.,* 859 F. Supp. 2d 522, 543 (W.D.N.Y. 2012). Because Plaintiff does not bring suit against federal officials, it fails to allege a violation of the Tenth Amendment. In any event, there is no private right of action for enforcing the Tenth Amendment. *Rivera v FBI,* No. 5:16-cv-00997, 2016 WL 6081435, at \*1 n.4 (N.D.N.Y. Sept. 13, 2016).

## XII.    PLAINTIFF'S CLAIM UNDER THE COMPACT CLAUSE FAILS

Plaintiff alleges that, on April 13, 2020, Governor Cuomo entered into a "compact, pact and/or coalition" with northeastern states to combat the pandemic and coordinate the reopening of states without congressional approval. Dkt. 8, ¶ 200. Plaintiff asserts that neighboring governors shared resources and information across state lines and claims "this unprecedented regional compact" unlawfully permits governors of other states to dictate the COVID-19 mitigation efforts and economic re-opening of the State of New York. *Id.* ¶ 201. According to

44

Plaintiff, Governor Cuomo unconstitutionally authorized the Governors of neighboring States to institute mandatory restrictions, including the shuttering of schools and closing of non-essential businesses, in New York State and upon New York State citizens. *Id.* ¶ 202. Plaintiff demands a declaration that Governor Cuomo violated the Compact Clause and asks the Court to enjoin Governor Cuomo from continuing to engage with other governors in any and all compacts absent the approval of Congress. *Id* ¶ 295. The claim fails for numerous reasons.

First, Plaintiff lacks standing to bring such a claim because it does not allege any injury arising from it. *See, e.g., Mariana v. Fischer,* 338 F.3d 189 (3d Cir. 2003) (finding plaintiff lacked standing to bring Compact Clause claim because it failed to make particularized, concrete allegations of injury in fact), *cert. denied,* 540 U.S. 1179 (2004).

Second, over 100 years ago, the Supreme Court made clear that the Compact Clause could not reasonably be read to apply to *every* agreement among multiple states. In *Virginia v. Tennessee,* 148 U.S. 503, 518-19 (1893), not only did the Court observe that many interstate agreements "can in no respect concern the United States," it specifically said "it would be the height of absurdity" to hold that states threatened with sickness and death could not unite to prevent and repel the pestilence without congressional approval. *Id.* at 518. Given this Supreme Court precedent, it would also be "the height of absurdity" for Plaintiff to suggest that northeastern states threatened by the COVID-19 pandemic were not permitted to work together to prevent and repel the pandemic.

Third, Plaintiff fails to cite to any alleged compact or set forth its terms. To the extent Plaintiff complains about an April 13, 2020 announcement from the Governor's office that northeastern states agreed to work together through a multi-state council to restore the economy and get people back to work while minimizing the risk of COVID-19, this does not constitute a

compact under the purview of the Compact Clause. Analyzed under compact law, there are three "classic indicia" of a binding regulatory compact: (1) a joint regulatory body; (2) state enactment that requires reciprocal action to be effective: and (3) the prohibition of unilateral repeal or modification. *Northeastern Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 472 U.S. 159, 179 (1985). Plaintiff has not alleged, nor can it show, any of them.

Plaintiff had not asserted that a joint regulatory body, contract, regulation, passage of law, or agreement binds any of the states. Nor has it asserted that the council has regulatory powers. Plaintiff cannot contest that each state is free to make its own decisions concerning reopening of schools, restaurants, gyms, public events, churches, businesses, and the like. Similarly, Plaintiff has not alleged and cannot show that the alleged compact has a formal enforcement mechanism, cedes state sovereignty or delegates any governing power to a compact-created agency. As such, Plaintiff cannot show a compact that falls under the Compact Clause. *United States Steel Corp. v. Multistate Tax Comm'n,* 434 U.S. 452, 473 (1978) (finding no compact where, among other things, the alleged pact did not purport to authorize the member States to exercise any powers they could not exercise in its absence, nor delegate sovereign power to a Commission, and each state was free to withdraw and retained complete freedom to adopt or reject the Commission's rules and regulations).

Even if all indicia of a compact were present, only agreements that tend to "increase political power in the states," such that they "may encroach upon or interfere with the just supremacy of the United States" fall within the scope of the Compact Clause. *Id.* at 481; *New Hampshire v. Maine,* 426 U.S. 363, 369 (1976). In *U.S. Steel,* the Supreme Court offered three factors which, if present in an agreement between states, could "enhance state power in quoad the National Government": (1) if the agreement in question authorized member states to

"exercise any powers they could not exercise in its absence"; (2) if there was any "delegation of sovereign power" to an outside organization; and (3) if each state was "free to withdraw at any time." 434 U.S. at 473.

Here, Plaintiff has not alleged any provision of the purported compact that enhances the political power of the member States in a way that encroaches upon the supremacy of the United States. Plaintiff has not alleged, nor can it, that a compact authorizes member States to exercise any powers they could not exercise in the absence of a pact. There is no delegation of sovereign power to a commission or group. Each State is free to address the pandemic in its state in a way that it deems best. In the end, Plaintiff complains about a voluntary agreement to share resources and information. As the Supreme Court made clear, the Compact Clause is "not to be construed to limit the variety of arrangements which are possible through the voluntary and cooperative actions of individual States with a view to increasing harmony within the federalism created by the Constitution." *People of State of N.Y. v. O'Neil*, 359 U.S. 1, 6 (1959). "Far from being divisive," a multi-state counsel would be a "catalyst of cohesion" that "is within the unrestricted area of action left to the States by the Constitution." *Id.* at 6. As such, Plaintiff's Compact Clause claim fails as a matter of law.

## XIII.    PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES MUST BE DISMISSED

Plaintiff's thirteenth claim seeks attorneys' fees under 42 U.S.C. § 1988. Dkt. 8, ¶ 297. Section 1988 does not create a private right of action, *Artemov v Ramos*, No. 18-cv-2537, 2018 WL 2121595, at *2 (E.D.N.Y. 2018), and is simply a fee shifting statute. As importantly, § 1988 does not permit an award of attorneys' fees to *pro se* plaintiffs. *Kay v Ehrler*, 499 U.S. 432, 437 (1991). This is true even if the *pro se* plaintiff is an attorney or law firm. *Id.*; *see also Hawkins v 1115 Legal Serv. Care*, 163 F.3d 684, 694-95 (2d Cir. 1998). As the Supreme Court has held:

A rule that authorizes awards of counsel fees to *pro se* litigants -- even if limited to those who are members of the bar -- would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

*Kay*, 499 U.S. at 438. In the Second Circuit, this principle has been applied to several fee shifting statutes, not just § 1988. *See United States DOJ v Hudson*, 626 F.3d 36 (2d Cir. 2010) (applying the rule to 26 U.S.C. § 7430 of the Internal Revenue Code); *Pietrangelo v United States Army*, 568 F.3d 341, 343-344 (2d Cir. 2009) (applying the rule to Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)); *SEC v Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994) (applying the rule to the Equal Access to Justice Act (EAJA), 28 U.S.C.S. § 2412).

Any argument that this rule should not apply to cases where, as here, the Plaintiff is a law firm, should be rejected consistent with a long line of cases in this Circuit that refused to award attorneys' fees to *pro se* law firms. *See, e.g. Mintz & Gold LLP v. Daibes*, No. 15-cv-1218, 2015 WL 2130935, at *8 (S.D.N.Y. May 6, 2015) (collecting cases); *Newman & Cahn, LLP v Sharp*, 388 F.Supp.2d 115, 119 (E.D.N.Y. 2005) (principle that *pro se* litigants not entitled to attorneys' fees "applies equally to attorneys at law firms that represent themselves or the firm in a pro se capacity."). Thus, even if Plaintiff could prevail on a successful claim for which §1988 allows fees—and it cannot—any claim for attorneys' fees would necessarily fail.

## CONCLUSION

Plaintiff's claims are beyond the Court's jurisdiction and meritless. Therefore, the

Amended Complaint should be dismissed in its entirety.

Dated: Buffalo, New York
August 11, 2020

Respectfully submitted,
LETITIA JAMES
Attorney General of the State of New York
Attorney for the Defendants

By:    /s/ George Michael Zimmermann
GEORGE MICHAEL ZIMMERMANN
KATHLEEN M. KACZOR
JOEL J. TERRAGNOLI
Assistant Attorneys General
350 Main Street, Suite 300A
Buffalo, NY 14202